**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KAIROS CREDIT STRATEGIES OPERATING PARTNERSHIP, LP,<br><br>              *Plaintiff*,<br><br>    v.<br><br>THE FRIARS NATIONAL ASSOCIATION, INC.; CITY OF NEW YORK DEPARTMENT OF ENVIRONMENTAL CONTROL; COMMISSIONER OF LABOR STATE OF NEW YORK DEPARTMENT OF LABOR; NEW YORK STATE TAX DEPARTMENT LEGAL DEPARTMENT; NEW YORK CITY FINANCE ADMINISTRATION BUREAU OF COMPLIANCE AND COLLECTION; HOTEL RESTAURANT & CLUB EMPLOYEES AND BARTENDERS UNION LOCAL 6 AND CLUB EMPLOYEES PENSION FUND; and "JOHN DOE #1" through "JOHN DOE #20," the twenty names being fictitious and unknown to the Plaintiffs, the person or parties intended being the tenants, occupants, persons or corporations, if any, having or claiming an interest in lien upon the premises,<br><br>              *Defendants*. | Civil Action No.<br><br>**COMPLAINT** |

Plaintiff Kairos Credit Strategies Operating Partnership, LP ("Plaintiff"), by its attorneys, Akerman LLP, as and for its Complaint (the "Complaint") respectfully alleges as follows:

## NATURE OF ACTION

1.    Plaintiff brings this action to foreclose that certain Consolidated, Extended, Amended and Restated Mortgage, Assignment of Rents, Security Agreement and Financing Statement dated as of June 25, 2021 in the original principal amount of THIRTEEN MILLION AND NO/100 Dollars ($13,000,000.00) (the "Mortgage"), which encumbers certain real property located at 57 East 55th Street, New York, New York 10022 (Block 1291, Lot 127), as more

particularly described in the Mortgage, the buildings, structures, fixtures, and other improvements thereon, in addition to the Land, Improvements, Equipment, Rents, Leases, Personal Property, Licenses and Permits, and other collateral granted by the Mortgage (the "Mortgaged Premises").

## I.    **THE PARTIES**

2.    Plaintiff Kairos Credit Strategies Operating Partnership, LP ("Plaintiff") is the lender of the loan at issue in this action and the mortgagee of the Mortgage being foreclosed upon in this action. Plaintiff is a limited partnership organized and existing under the laws of the State of Delaware. Because Plaintiff is a limited partnership, Plaintiff's citizenship is determined by that of its partners. Plaintiff's partners are Kairos Credit Strategies REIT, Inc. ("KCRI") and Kairos Incentive Company, LLC ("KICL"). KCRI is incorporated and existing under the laws of the State of Delaware and maintains a principal place of business at 30242 Esperanza Rancho Santa Margarita, CA 92688 and KICL is a Delaware limited liability company that maintains a principal place of business at 30242 Esperanza Rancho Santa Margarita, CA 92688 and all of its members are exclusively California citizens. Plaintiff is thus a citizen of the State of Delaware and the State of California. Therefore, for purposes of 28 U.S.C. § 1332, Plaintiff is a citizen of the State of Delaware and the State of California.

3.    Upon information and belief and at all times mentioned herein, The Friars National Association, Inc. ("Borrower"), is a non-charitable not-for-profit corporation organized and existing under the laws of the State of New York, with its principal place of business at 57 E. 55th St., New York, NY 10022. Because Borrower is incorporated under the laws of the State of New York and has its principal place of business in the State of New York, for purposes of 28 U.S.C. § 1332, Borrower is a citizen of the State of New York. Borrower is made a defendant in this action

because it is an obligor under the Note, as defined below, and is the mortgagor of the Mortgage being foreclosed upon in this action.

4.      Upon information and belief and at all times mentioned herein, the City of New York Department of Environmental Control (the "NYCDEC") is a city department maintaining a principal place of business at 66 John Street, New York, New York 10038 and a citizen of the State of New York. The NYCDEC is made a defendant in this action as an environmental control board judgment creditor of Borrower as a result of that certain judgment in the original principal amount of $1,000.00 and stemming from Environmental Control Board Violation No. 12114141M, concerning the Mortgaged Premises (the "NYCDEC Judgment"). The NYCDEC is a citizen of the State of New York for purposes of 28 U.S.C. § 1332.

5.      Upon information and belief and at all times mentioned herein, Commissioner of Labor State of New York Department of Labor (the "NYSDOL") is a Department of the State of New York maintaining a principal place of business at Building 12, W.A. Harriman Campus, Albany, New York 12226. The NYSDOL is made a defendant in this action as a result of that certain judgment in the original principal amount of $2,390.27 ctrl no: 004140048-01 against Borrower (the "NYSDOL Judgment"). The NYSDOL is a citizen of the State of New York for purposes of 28 U.S.C. § 1332.

6.      Upon information and belief and at all times mentioned herein, the New York State Tax Department Legal Department (the "NYSTD") is a Department of the State of New York maintaining a principal place of business at Building 9, W.A. Harriman Campus, Albany, New York 12227. The NYSTD is made a defendant in this action as a possible franchise tax creditor of Borrower. The NYSTD is a citizen of the State of New York for purposes of 28 U.S.C. § 1332.

69777207;3

7.     Upon information and belief and at all times mentioned herein, the New York City Finance Administration Bureau of Compliance and Collection (the "NYCFAB") is a Department of the City of New York maintaining a principal place of business at 1 Centre Street New York, New York 10007 and/or 66 John Street, Room 104, New York, New York 10038. The NYCFAB is made a defendant in this action as a possible New York City Corporate Business Tax Creditor of Borrower. The NYCFAB is a citizen of the State of New York for purposes of 28 U.S.C. § 1332.

8.     Upon information and belief and at all times mentioned herein, the Hotel, Restaurant & Club Employees and Bartenders Union, Local 6 and Club Employees Pension Fund (the "Union") is a labor union whose members are citizens of the State of New York, maintaining a principal place of business at 709 Eighth Avenue New York, NY 10036. The Union is made a defendant in this action as a result of that certain judgment in the original principal amount of $153,430.64, Index No. 654668-2022, from the New York Supreme Court (Manhattan) dated February 27, 2023 against Borrower (the "Union Judgment"). The Union is a citizen of the State of New York for purposes of 28 U.S.C. § 1332 because, upon information and belief, its members are citizens of the State of New York.

9.     Upon information and belief, "John Doe #1" through "John Doe #20" are fictitious names and unknown to the Plaintiff, and have been made defendants to this action because of possible claims or interests in possession or liens against the Mortgaged Premises.

## II.    **JURISDICTION AND VENUE**

10.    This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

69777207;3

11.     Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391 because the Mortgaged Premises is located in this judicial district, at least one defendant resides in this judicial district, and a substantial part of the events or omissions giving rise to the claims in this action occurred in this judicial district.

12.     Further, venue is proper in the United States District Court for the Southern District of New York because, pursuant to Section 10.7 of the Loan Agreement, Borrower consented to the jurisdiction and venue of this Court. Specifically, Section 10.7 of the Loan Agreement provides in pertinent part

> WITH RESPECT TO ANY SUIT, ACTION OR PROCEEDINGS RELATING TO THIS AGREEMENT (EACH, A "PROCEEDING"), BORROWER IRREVOCABLY (A) SUBMITS TO THE NON-EXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS HAVING JURISDICTION IN THE CITY OF NEW YORK, COUNTY OF NEW YORK AND STATE OF NEW YORK, AND (B) WAIVES ANY OBJECTION WHICH IT MAY HAVE AT ANY TIME TO THE LAYING OF VENUE OF ANY PROCEEDING BROUGHT IN ANY SUCH COURT, WAIVES ANY CLAIM THAT ANY PROCEEDING HAS BEEN BROUGHT IN AN INCONVENIENT FORUM AND FURTHER WAIVES THE RIGHT TO OBJECT, WITH RESPECT TO SUCH PROCEEDING, THAT SUCH COURT DOES NOT HAVE JURISDICTION OVER SUCH PARTY.

## III.    THE LOAN AND LOAN DOCUMENTS

### A.    The Prior Loan

13.     On or about February 21, 2020, Borrower became indebted to Titan Capital ID, LLC ("Original Lender") in the principal sum of NINE MILLION AND NO/100 dollars ($9,000,000) (the "Original Loan") in connection with the assignment of pre-existing mortgage debt to Original Lender and additional loan advances to Borrower made by Original Lender.

14.     In connection with the Original Loan, Borrower executed that certain Consolidated, Extended, Amended and Restated Mortgage Note dated February 21, 2020, in the principal sum

of NINE MILLION AND NO/100 dollars ($9,000,000) (as amended, extended, restated, and/or assigned, the "Original Note").

15.     Repayment of the Original Note is secured by, among other things, that certain Consolidation, Modification and Extension of Mortgage, Assignment of Leases and Rents and Security Agreement (as amended, extended, restated, and/or assigned, the "Original Mortgage"), dated as of February 21, 2020, executed by Borrower as borrower and mortgagor, in favor of Original Lender, as lender and mortgagee.

16.     The Original Mortgage was recorded on March 4, 2020 with the Office of the City Register of the City of New York (the "City Register") as City Register File No. ("CRFN") 202000082528. A true and correct copy of the Original Mortgage is annexed hereto as **Exhibit A**.

17.     The Original Note and the Original Mortgage, together with all other documents or agreements executed and delivered in connection with the Original Loan are collectively referred to herein as the "Original Loan Documents."

###     B.     <u>Assignment of Loan Documents to Plaintiff</u>

18.     On or about June 25, 2021, Original Lender assigned the Original Loan Documents, including the Original Note and the Original Mortgage, to Plaintiff (the "Assignment").

19.     In connection with the Assignment, Original Lender executed and delivered the following documents to Plaintiff:

a.     That certain Allonge to the Original Note by Original Lender in favor of Plaintiff, a true and correct copy of which is annexed as **Exhibit B** hereto and

b.     That certain Assignment of Mortgage, effective as of June 25, 2021, which was properly recorded with the City Register on July 7, 2021 as CRFN 2021000256894, a true and correct copy of which is annexed hereto as **Exhibit C**.

C.    **The Loan from Plaintiff**

20.    On or about June 25, 2021, Borrower became indebted Plaintiff in the principal sum of THIRTEEN MILLION AND NO/100 Dollars ($13,000,000.00) (the "Loan") in connection with the Assignment and additional loan advances to Borrower made by Plaintiff.

21.    The Loan is evidenced by that certain Consolidated, Extended, Amended and Restated Term Loan and Security Agreement dated June 25, 2021 executed by and between Borrower, as borrower, and Plaintiff, as lender (as amended, extended, restated, and/or assigned, the "Loan Agreement"). A true and correct copy of the Loan Agreement is annexed hereto as **Exhibit D**.

22.    In connection with the Loan, Borrower executed that certain Gap Promissory Note made by Borrower to Plaintiff dated June 21, 2021 in the principal sum of FOUR MILLION AND NO/100 dollars ($4,000,000.00) (the "Gap Note"). A true and correct copy of the Gap Note is annexed hereto as **Exhibit E**.

23.    Repayment of the Gap Note is secured by, among other things, that certain Gap Mortgage (the "Gap Mortgage"), which is dated as of June 25, 2021, and was executed by Borrower, as mortgagor, in favor of Plaintiff, as mortgagee.

24.    The Gap Mortgage was recorded on July 7, 2021 with the City Register as CRFN 2021000256896. A true and correct copy of the Gap Mortgage is annexed hereto as **Exhibit F**.

25.    In connection with the Loan, Borrower executed that certain Consolidated, Extended, Amended and Restated Promissory Note dated June 25, 2021 in the principal sum of THIRTEEN MILLION AND NO/100 Dollars ($13,000,000.00) (as amended, extended, restated, and/or assigned, the "Note"). A true and correct copy of the Note is annexed hereto as **Exhibit G**.

69777207;3

26.     The Note consolidated, extended, amended, and restated (i) the Original Note and (ii) the Gap Note, as set forth therein.

27.     Repayment of the Note is secured by, among other things, the Mortgage, which is dated as of June 25, 2021, and was executed by Borrower, as mortgagor, in favor of Plaintiff, as mortgagee. The Mortgage consolidated, extended, amended and restated the (i) Original Mortgage and (ii) the Gap Mortgage.

28.     The Mortgage was recorded on July 7, 2021 with the City Register as CRFN 2021000256897. A true and correct copy of the Mortgage is annexed hereto as **Exhibit H**.

29.     The Loan is further secured by an Assignment of Leases and Rents dated as of June 25, 2021, executed by Borrower, as assignor, in favor of Plaintiff, as assignee (the "Assignment of Leases").

30.     The Assignment of Leases was recorded on July 7, 2021 with the City Register as CRFN 2021000256898. A true and correct copy of the Assignment of Leases is annexed hereto as **Exhibit I**.

31.     In connection with the Loan, Borrower also executed that certain Cash Management Agreement (the "Cash Management Agreement") dated as of June 25, 2021, pursuant to which, Borrower agreed, among other things, that upon the occurrence of an Event of Default, as defined therein, Plaintiff had the right, and Borrower agreed to cooperate, to implement cash management in accordance with the Cash Management Agreement and other Loan Documents. A true copy of the Cash Management Agreement is annexed hereto as **Exhibit J**.

32.     On June 29, 2021, a UCC Financing Statement was filed with the New York Department of State as Filing Number 202106290234558 (the "State UCC"). A true copy of the State UCC is annexed hereto as **Exhibit K**.

69777207;3

33.     On July 7, 2021, a UCC Financing Statement was filed with the Office of the City Register of the City of New York as CFRN 2021000256899 (the "City UCC"). A true and correct copy of the City UCC is annexed hereto as **Exhibit L**.

34.     The Loan Agreement, the Gap Note, the Gap Mortgage, the Note, the Mortgage, the Assignment of Leases, the Cash Management Agreement, the County UCC, and the City UCC together with all other documents or agreements executed and delivered in connection with the Loan, are collectively referred to as the "Loan Documents."

35.     As of the date hereof, as a result of the facts described above, evidenced by each of the written assignments, Plaintiff is the owner and holder of the Loan Documents, including, but not limited to, the Note and the Mortgage.

## IV.    <u>**BORROWER'S EVENTS OF DEFAULT**</u>

36.     Pursuant to section 19 of the Mortgage, "[Borrower] shall be in default under this Mortgage upon the occurrence of any default or breach by [Borrower] of the terms, conditions, representations, warranties, and covenants of this Mortgage and upon the occurrence of an Event of Default in accordance with the terms of the Loan Agreement or any of the other Loan Documents …."

37.     Pursuant to section 2 of the Mortgage, "[Borrower] shall comply with all provisions hereof, of the Note, and of all of the other Loan Documents…."

38.     Pursuant to section 8.1 of the Loan Agreement, "Any one or more of the following events, following any applicable notice requirements and/or cure period, if any, shall constitute an event of default … under this Agreement: … (o) If any event of default as defined in any of the other Loan Documents occurs and is not cured within the applicable notice and/or cure period, if any[.]"

9

A.    **Payment Defaults**

39.    Pursuant to Section 2.4 of the Loan Agreement, Borrower was required to make a payment to Plaintiff of interest in arrears on the principal balance of the Loan at a per annum rate equal to the Interest Rate, as defined therein, on each Payment Date (each a "Monthly Debt Service Payment"), as defined therein, occurring in August 2021 on each payment date thereafter to and including the Maturity Date, as defined therein.

40.    Pursuant to section 8.1 of the Loan Agreement, an Event of Default occurs "If Borrower fails to pay when due and payable, or when declared due and payable in accordance with this Agreement, all or any portion of the Obligations (whether principal, interest (including any interest which, but for the provisions of the Bankruptcy Code, would have accrued on such amounts), fees and charges due Lender, reimbursement of Lender Expenses, or other amounts constituting Obligations) within ten (10) days that such payment is due without need for further Lender notice …."

41.    Pursuant to section 2 of the Mortgage, Borrower was obligated to "promptly pay to [Plaintiff] the principal with interest thereon and all other sums required to be paid by [Borrower] under the Note, this Mortgage, and of all of the other Loan Documents."

42.    Borrower failed to timely make the Monthly Debt Service Payment due on March 1, 2023, and each Monthly Debt Service Payment thereafter (the "Payment Defaults").

43.    On March 13, 2023, Plaintiff sent Borrower a written Notice of Default (the "First Notice of Default"), which set forth the Payment Defaults and demanded Borrower cure the Payment Defaults immediately. On March 30, 2023, Plaintiff sent Borrower another written Notice of Default accelerating the indebtedness and demanding that Borrower pay the entire outstanding balance under the Loan (the "Second Notice of Default" and, collectively with the First Notice of

10

69777207;3

Default, the "Notices of Default"). Borrower failed to cure the Payment Defaults despite its receipt of the Notices of Default. True and correct copies of the Notices of Default are annexed hereto collectively as **Exhibit M**.

44.    Accordingly, the Payment Defaults constitute Events of Default under the Loan Documents, which exist and have existed as of the date hereof.

      B.    **<u>Insurance Defaults</u>**

45.    Pursuant to Section 4 of the Mortgage, "[Borrower] shall obtain, maintain and keep in full force and effect during the term of this Mortgage, or cause Mortgagor's lessees to obtain, maintain and keep adequate insurance coverage, with all premiums paid thereon and without notice or demand, with respect to its properties and business against loss or damage of the kinds and in the amounts as set forth in the Loan Agreement."

46.    Section 5.1 of the Loan Agreement provides that "Borrower will maintain, or cause to be maintained, with respect to the Property, fire and extended coverage insurance policies … Borrower shall also furnish to Lender, promptly following Borrower's receipt thereof (i) copies of all insurance policies (or certificates thereof), including title insurance, affecting the Property and (ii) the original or copy of all recorded documents affecting the Property."

47.    Section 5.14 of the Loan Agreement provides "Borrower shall furnish to Lender and maintain at all times, at Borrower's sole cost and expense, such policies of insurance in such amounts and in accordance with the standards set forth on Exhibit D attached hereto." Exhibit D to the Loan Agreement requires Borrower "to maintain … insurance cover[age] with respect to the property at all times during the term of the loan[.]" Such insurance coverage includes, without limitation, umbrella liability, general liability, flood, and property insurance. *See* Loan Agreement, Ex. D.

48.     Borrower failed to maintain adequate insurance coverage during the term of the Mortgage; specifically, although an insurance policy is in place on the Mortgaged Premises, due Borrower's abandonment of the Mortgaged Premises and the vacancy provisions contained in the applicable insurance policy, the amount of coverage has been compromised, resulting in a lack of coverage of a number of otherwise covered events, beneath the requirements of the Loan Agreement (the "Insurance Defaults").

49.     As a result of the Insurance Defaults, Borrower caused Events of Default to occur under the Loan Documents, which exist and have existed as of the date hereof.

## C.     Care and Use Defaults

50.     On or about March 23, 2023, pursuant to its rights under section 15 of the Mortgage and Section 7.6 of the Loan Agreement, Plaintiff performed an inspection of the Mortgaged Premises (the "Inspection"). A true and correct copy of the report summarizing the observations made during the Inspection (the "Inspection Report") is annexed hereto as **Exhibit N**.

51.     Pursuant to Section 6 of the Mortgage, "Mortgagor shall not permit, commit or suffer any waste, impairment or deterioration of the Mortgaged Property or any part thereof, and shall keep the same and improvements thereon in good condition and repair. Mortgagor shall notify Lender in writing within five (5) days of any damage or impairment of the Mortgaged Property."

52.     During the Inspection, Plaintiff observed that the Mortgaged Premises: (i) appeared to be completely abandoned; (ii) had exposed electrical wiring and breaker boxes with missing electrical panel covers, (iii) had extensive water and mold damage, (iv) was littered with mounds of trash, (v) showed signs of the presence of rodents and roaches, (vi) had a standing pool of water about one inch deep in the sub-basement, (vii) had broken furniture, (viii) had damage to many of the ceilings, (ix) was littered with soiled towels and other laundry, (x) appeared to be missing

several items of valuable memorabilia and Mortgaged Property once present in the Mortgaged Premises based upon picture hooks and hardware with evidence of missing photographs and artwork, and (xi) had legal documents, including certain demand letters as well as possible confidential information strewn about haphazardly.

53.    Upon information and belief, the Mortgaged Premises are not managed by any Property Manager, as that term is defined in the Loan Agreement, subject to any Management Agreement, as that term is defined in the Loan Agreement.

54.    Upon information and belief, Borrower is unable to afford to hire a Property Manager, as that term is defined in the Loan Agreement.

55.    The above facts establish that the Mortgaged Premises are subject to "waste, impairment or deterioration" and are not kept "in good condition and repair."

56.    Moreover, Borrower failed to notify Plaintiff in writing within five (5) days of such damage and impairment to the Mortgaged Premises and Mortgaged Property (collectively, the "Care and Use Defaults").

57.    As a result of the Care and Use Defaults, Borrower caused Events of Default to occur under the Loan Documents, which exist and have existed as of the date hereof.

**D.    Negative Covenant Defaults**

58.    Pursuant to section 6.4 of the Loan Agreement, "Borrower shall not convey, sell, lease, license, assign, transfer, or otherwise dispose of any of Borrower's assets without the prior written consent of [Plaintiff], to be granted or withheld in [Plaintiff]'s sole discretion."

59.    During the Inspection, Plaintiff observed that wall décor had been removed from more than one wall. Plaintiff did not provide any consent to sale, removal, transfer, or disposition of any of the wall décor, which is part of the Mortgaged property, nor did Borrower provide any

13

notice of such sale, removal, transfer or disposition (the "Asset Disposal Defaults"). *See generally* Ex. N.

60.     As a result of the Asset Disposal Defaults, Borrower caused Events of Default to occur under the Loan Documents, which exist and have existed as of the date hereof.

61.     Pursuant to Section 6.13 of the Loan Agreement, "Borrower shall not suspend or change a substantial portion or its or their business."

62.     Borrower appears to have abandoned the Mortgaged Premises no longer operates the business it once operated in the Mortgaged Premises. Borrower has suspended a substantial portion of its business (the "Change of Business Default").

63.     As a result of the Change of Business Default, Borrower caused an Event of Default to occur under the Loan Documents, which exists and has existed as of the date hereof.

64.     Pursuant to Section 6.22 of the Loan Agreement, "Borrower shall not enter into, modify, amend, terminate or cancel any management contracts for the Property or agreements with agents or brokers, without the prior written approval of [Plaintiff] not to be unreasonably withheld or delayed."

65.     The Mortgaged Premises are not managed by any Property Manager, as that term is defined in the Loan Agreement, and Borrower cannot afford to hire a Property Manager, as that term is defined in the Loan Agreement, or otherwise protect the Mortgaged Premises or Mortgaged Property (the "Management Default").

66.     As a result of the Management Default, Borrower caused an Event of Default to occur under the Loan Documents, which exists and has existed as of the date hereof.

### E.    **The Judgment and Lien Defaults**

67.    Pursuant to Section 8.1(i) of the Loan Agreement, the following constitutes an Event of Default under the Loan Agreement: "Judgment or other claim in an amount in excess of $50,000.00 becomes a Lien or encumbrance upon any material portion of any Loan Party's assets or any Borrower Collateral[.]"

68.    Pursuant to Section 3.4 of the Loan Agreement, Borrower represented and warranted that "No Loan Party is a party to any agreement or instrument or subject to any judgment, order, writ, injunction, decree or regulation materially and adversely affecting its business, properties or assets, operations, or condition (financial or otherwise)."

69.    Pursuant to Section 3.3 of the Loan Agreement, Borrower represented and warranted that "There are no actions, suits or proceedings pending in which service of process has been directly effectuated or, to the best knowledge of Borrower, threatened against or affecting any Loan Party, at law or in equity or before or by any Governmental Authority or third party payor which are undisclosed and involve any of the transactions contemplated herein and which, if adversely determined against any Loan Party could reasonably be expected to have a Material Adverse Effect."

70.    Pursuant to Section 3.29 of the Loan Agreement, "Borrower agrees that all of the representations and warranties set forth in this Article III and elsewhere in this Agreement are true as of the date hereof, will be true at the Loan Opening and, except for matters which have been disclosed by Borrower and approved by Lender in writing, at all times thereafter."

71.    Borrower is subject to the NYCDEC Judgment, the NYSDOL Judgment, and the Union Judgment (collectively, the "Judgments"). Copies of the relevant pages of the title report reflecting the Judgments are annexed hereto as **Exhibit O**. The Judgments constitute a lien or

encumbrance upon a material portion of any Borrower's assets and the Mortgaged Premises. The Judgments are materially and adversely affecting Borrower's business, properties or assets, operations, or condition (financial or otherwise). The Judgments could reasonably be expected to have a Material Adverse Effect, as that term is defined in the Loan Agreement. The Judgments evidence that an action, suit or proceeding occurred, which affected the Mortgaged Premises, and which have a Materially Adverse Effect, as that term is defined in the Loan Agreement. The Union Judgment is in excess of $50,000. Borrower did not inform Plaintiff of the Judgments as of the date hereof (the "Judgment Defaults").

72.    As a result of the Judgment Defaults, Borrower caused an Event of Default to occur under the Loan Documents, which exists and has existed as of the date hereof.

73.    The Payment Defaults, the Insurance Defaults, the Care and Use Defaults, the Asset Disposal Defaults, the Change of Business Default, the Management Default and the Judgment Defaults are hereinafter collectively referred to as the "Events of Default."

## FIRST CAUSE OF ACTION
### (Foreclosure of Mortgage)

74.    Plaintiff incorporates herein by reference the paragraphs set forth above as if fully set forth herein.

75.    By reason of, among other things, the Events of Default, Borrower is in default under the Loan Documents.

76.    Borrower has failed to cure its defaults despite due demand in writing through the Notices of Default. *See* Ex. I.

77.    By reason of the Defaults, the Debt has become full recourse to Borrower under the Loan Documents, pursuant to, *inter alia*, Section 21 of the Loan Agreement.

78.     Plaintiff, by reason of the Events of Default, declares that the Maturity Date is accelerated and elects that the whole unpaid principal sums due on the Note and Mortgage, together with all unpaid interest, late charges, default interest, special servicing fees, loan collections costs, legal or any other costs associated with curing the default, shall now be due.

79.     Further, by reasons of the Events of Default, Plaintiff is entitled to foreclose the Mortgage.

80.     As of March 30, 2023, the amount owed to Plaintiff is $13,490,389.51 (the "Debt") comprised of $13,000,000.00 principal and $237,898.00 interest, $1,840.00 Servicing Fees, and $79,450.84 Tax and Insurance Reserve. The Debt includes late fees of $6,708.66 as a result of failure to make timely payment in accordance with the Loan Documents, along with $23,610.15 in attorneys' fees and costs incurred in negotiating and drafting unexecuted amendments to the Loan Documents, but excludes other attorneys' fees and costs of collection, and other costs and expenses previously incurred by, or which may be in the future incurred by Plaintiff, including, but not limited to taxes and other costs and expenses as set forth in the Loan Documents.

81.     Any interest in or lien upon the Mortgaged Premises or Mortgaged Property held or claimed by any defendant is subject to and junior in priority to the lien of Plaintiff's Mortgage.

82.     Pursuant to the terms of the Mortgage, the mortgagee reserves the right to pay taxes and other liens affecting the Mortgaged Premises or Mortgaged Property, which liens, if any, would be and/or are superior to the lien of the Mortgage, and which, when paid by the mortgagee, together with interest thereon as provided in said Mortgage, are to be added to the amounts due under the Mortgage. Plaintiff may be required to pay such liens during the pendency of this action and will demand that such payments so made by it be added to the Mortgage debt as aforesaid.

83.    Pursuant to the Loan Documents, Borrower must pay Plaintiff's reasonable attorneys' fees expended to foreclose the Mortgaged Premises and the Mortgaged Property.

84.    Plaintiff has complied with all the terms and provisions of the Loan Documents.

85.    In order to protect its security interest in the Mortgaged Premises and Mortgaged Property, Plaintiff, as it is entitled to do under the Loan Documents, may be compelled to pay, during the pendency of this action, local taxes, assessments, water rates, insurance premiums, and other charges affecting the Mortgaged Premises and Mortgaged Property, and any sums thus paid by Plaintiff for such purposes, together with late payments due thereon, should be added to the sums otherwise due and deemed secured by the Mortgage and adjudged a lien.

86.    No proceeding other than this action has been commenced to recover the debt secured by the Mortgage owed to Plaintiff.

87.    Upon information and belief, each and all of the defendants herein have or claim to have some interest in, or lien upon, the Mortgaged Premises or Mortgaged Property or some part thereof, which interest or lien, if any, has accrued after the lien of the Mortgage and is subordinate thereto.

88.    In the event that Plaintiff possesses any other lien(s) against said Mortgaged Premises or Mortgaged Property, Plaintiff requests that such other lien(s) shall not be merged in Plaintiff's causes of action set forth in the Complaint, but that Plaintiff shall be permitted to enforce said other lien(s) and/or seek or proceeding(s), including, without limitation, any surplus money proceedings.

89.    Plaintiff shall not be deemed to have waived, altered, released or changed the election hereinafter made by reason of the payment after the date of the commencement of this action of any or all of the defaults mentioned herein, and such election shall continue and remain

effective until the costs and disbursements of this action, and any and all future defaults under the Loan Documents, and occurring prior to the discontinuance of this action, are fully paid.

90.     Plaintiff seeks to foreclose upon the Mortgage and recover the Debt, together with accrued interest, late charges, default interest, and any other amounts to be added pursuant to the terms of the Loan Documents, including costs and attorneys' fees and that Borrower be adjudged to pay the whole residue or so much thereof as the Court may determine to be just and equitable, of the debt remaining unsatisfied after the sale of the Mortgaged Premises and Mortgaged Property and the application of the proceeds pursuant to the provisions contained in such judgment, the amount thereof to be determined by the court as provided in Section 1371 of the Real Property Action and Proceedings Law.

**SECOND CAUSE OF ACTION**
**(Foreclosure of Security Interest in Personal Property)**

91.     Plaintiff incorporates herein by reference the paragraphs set forth above as if fully set forth herein.

92.     Through the Loan Documents, including, without limitation, the Loan Agreement and the Mortgage, Borrower granted Plaintiff a security interest in all present and after-acquired property of Borrower, including the Mortgaged Property (the "Collateral"). *See* Ex. D at §§ 1.1, 7.1; Ex. H at p. 2-5.

93.     The Collateral includes, among other things, all of Borrower's right, title, and interest in all currently existing and hereafter acquired or arising in accounts, books, commercial tort claims, deposit accounts, equipment, general intangibles, inventory, investment property (including all of its securities and securities accounts), negotiable collateral, supporting obligations, licenses and permits, money or other assets, media rights, memorabilia, collectibles, art, furnishings, furniture, and proceeds of the foregoing or tangible or intangible property resulting

19

from the sale, exchange, or other disposition of the foregoing. Ex. D at §§ 7.1, 1.1; Ex. H at p. 2-5.

94.     The Collateral is now owned by Borrower, which holds possession thereof.

95.     Due to the Events of Default, as alleged above, Plaintiff is entitled to foreclose on its security interest in the Collateral.

96.     The Loan Agreement and the Mortgage provide that, upon the occurrence of an Event of Default, as that term is defined in the Loan Agreement and the Mortgage, Plaintiff may exercise the following remedies, among others:

   a.  Entry of premises where the Collateral may be located;

   b.  Possession of the Collateral by any method permitted by law;

   c.  The sale or lease of the Collateral; and

   d.  The collection of any rents, income, and profits received in connection with the Collateral.

*See* Ex. H at §§ 21(a)(i), 21(a)(iv), 21(a)(v), 21(c), 21(d); Ex. D at §§ 9.1(c), 9.1(g), 9.1.

97.     Defendants may claim some interest or interests in the Collateral, but any such interest or interests are junior, inferior, and subordinate to Plaintiff's security interest therein.

### THIRD CAUSE OF ACTION
### (Court Appointment of Receiver)

98.     Plaintiff incorporates herein by reference the paragraphs set forth above as if fully set forth herein.

99.     Through the Mortgage, Borrower agreed in writing that, following an Event of Default, as that term is defined therein, under the Loan Documents, Plaintiff is entitled to appoint a receiver with broad powers to take over, manage, and/or sell the Mortgaged Premises and Mortgaged Property. *See* Ex. H at § 21(b).

100.    The Loan Documents provide that, following an Event of Default, Plaintiff "Lender may make application to a court of competent jurisdiction for appointment of a receiver of the Mortgaged Property." Ex. H at § 21(b); *see also* Ex. I at p.3 ("[Plaintiff] shall have the right and authority, without further notice whatsoever to [Borrower] and without regard to the adequacy of the security therefore, to: (a) make application to a court of competent jurisdiction for appointment of a receiver for all or any part of the [Mortgaged Property], as particularly set forth in the [Mortgage]….").

101.    The Loan Documents state that a receiver "shall have the usual powers and duties of receivers in similar cases," including to hold, maintain, lease, rent, manage, operate or otherwise use the Mortgaged Premises and Mortgaged Property. Ex. H at §§ 21(a)(ii), 21(b); *see also* Ex. I at p.3.

102.    By executing the Loan Documents, Borrower agreed that Plaintiff has the immediate right to the appointment of a receiver.

103.    By the above allegations, Plaintiff has demonstrated a likelihood of success on the merits on its claim that Borrower defaulted on its obligations under the Loan Documents and, therefore, Plaintiff is entitled to an order appointing a receiver.

104.    By reason of, the Events of Default, among other things, all as alleged above, there is an imminent danger that Plaintiff's security interests created and perfected by the Loan Documents will be concealed, lost, or diminished in value.

105.    Absent an order appointing a receiver having the powers set forth in the Loan Documents (as referenced in paragraph 100 above) and under applicable law, Plaintiff will be irreparably harmed by, among other things, a reduction or elimination of the value of the

Mortgaged Premises in which it maintains a security interest and that is the main source of recovery under the Loan Documents.

106.    The harm to Plaintiff would far outweigh any injury to Borrower.

**WHEREFORE**, Plaintiff demands judgment as follows:

a.  That all defendants, and all persons claiming under them be barred and forever foreclosed of all tight, title, lien, claim and equity of redemption in and to the Mortgaged Premises and Mortgaged Property, except for the right of the United States of America and its political divisions, to be redeemed as provided by applicable law;

b.  That the Mortgaged Premises and Mortgaged Property be sold as to obtain the greatest return of sale, whether sold jointly as a single parcel or sold separately as two or more parcels;

c.  That the money raised from the sale of the Mortgaged Premises and Mortgaged Property be paid into Court and Plaintiff be paid first (i) the sum of $13,490,389.51 due and owing under the Loan Documents, with interest to the time of payment; (ii) late charges; (iii) all sums, including payment of taxes and other charges, which may be expended by plaintiff to protect its security interest in the Mortgage, and (iv) reasonable costs and attorneys' fees incurred by Plaintiff in enforcing this action;

d.  That defendant Borrower be adjudged liable under the Loan Documents for all amounts of the debt remaining unsatisfied after the application of the proceeds of such sale pursuant to a judgment of foreclosure in accordance with RPAPL §1371;

e.  That defendant Borrower be adjudged liable under the Loan Documents for reasonable costs and attorneys' fees incurred by Plaintiff in enforcing this action;

f.  That upon a separate application, Plaintiff shall be entitled to the appointment of a receiver with respect to the Mortgaged Premises and Mortgaged Property, having the powers stated in the Loan Documents and such other powers as appropriate and necessary for the receiver to perform his or her services and duties;

g.  That the purchaser(s) of the Mortgaged Premises at such foreclosure sale be awarded a writ of possession and all other persons in possession of the premises be evicted; and

h.  That Plaintiff be awarded such other and further relief as the Court may deem just and proper.

Dated: New York, New York
          April 7, 2023

**AKERMAN LLP**

By:  _/s/ Mark S. Lichtenstein_
     Mark S. Lichtenstein, Esq.
     1251 Avenue of the Americas, 37th Floor
     New York, NY 10020
     Tel. No.: (212) 880-3800
     mark.lichtenstein@akerman.com

     *Attorney for Plaintiff Kairos Credit Strategies*
     *Operating Partnership, LP*

23
