**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

KAIROS CREDIT STRATEGIES OPERATING PARTNERSHIP, LP,

    *Plaintiff*,

v.

THE FRIARS NATIONAL ASSOCIATION, INC.; CITY OF NEW YORK DEPARTMENT OF ENVIRONMENTAL CONTROL; COMMISSIONER OF LABOR STATE OF NEW YORK DEPARTMENT OF LABOR; NEW YORK STATE TAX DEPARTMENT LEGAL DEPARTMENT; NEW YORK CITY FINANCE ADMINISTRATION BUREAU OF COMPLIANCE AND COLLECTION; HOTEL RESTAURANT & CLUB EMPLOYEES AND BARTENDERS UNION LOCAL 6 AND CLUB EMPLOYEES PENSION FUND; and "JOHN DOE #1" through "JOHN DOE #20," the twenty names being fictitious and unknown to the Plaintiffs, the person or parties intended being the tenants, occupants, persons or corporations, if any, having or claiming an interest in lien upon the premises,

    *Defendants*.

Civil Action No.

---

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR THE APPOINTMENT OF A TEMPORARY RECEIVER

 

AKERMAN LLP
Mark S. Lichtenstein
1251 Avenue of the Americas, 37th Floor
New York, NY 10020
Tel. No. (212) 880-3800

*Attorneys for Plaintiff Kairos Credit Strategies Operating Partnership, LP*

**TABLE OF CONTENTS**

        **Page**

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .................................................................................................................................. 3

BORROWER EXPRESSLY CONSENTED TO THE APPOINTMENT OF A RECEIVER UPON DEFAULT ................................................................................................................................ 3

PLAINTIFF IS ENTITLED TO THE APPOINTMENT OF A RECEIVER BASED UPON THE IMMINENT DANGER OF LOSS AND PLAINTIFF'S LIKELIHOOD OF SUCCESS ON THE MERITS ..................................................................................................................................... 7

    A.    Borrower has Failed to Make Numerous Required Disclosures ..................................... 8

    B.    There is Imminent Danger of Loss ................................................................................. 9

    C.    Plaintiff's Other Legal Remedies Are Inadequate to Protect its Interests ..................... 11

    D.    Plaintiff Will Be Severely Harmed If a Receiver is Not Appointed ............................. 11

    E.    Plaintiff is Likely to Succeed in this Action ................................................................. 12

TRIGILD IS WELL-QUALIFIED TO SERVE AS RECEIVER .............................................. 12

CONCLUSION ............................................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*CCRF 2007-MF1 E. 53 Complex, LLC v. E. 53 BSD LLC*,
   2020 WL 13133639 (E.D.N.Y. Dec. 18, 2020) ........................................................................8

*Citibank, N.A. v. Nyland (CF8) Ltd.*,
   839 F.2d 93 (2d Cir. 1988) .....................................................................................................8

*Gustavia Home, LLC v. Rutty*,
   720 F. App'x 27 (2d Cir. 2017) ............................................................................................16

*Meyer v. Indian Hill Farm, Inc.*,
   258 F.2d 287 (2d Cir. 1958) ...................................................................................................8

*U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC*,
   866 F. Supp. 2d 247 (S.D.N.Y. 2012) ...............................................................................7, 12

*United States v. Zitron*,
   1990 WL 13278 (S.D.N.Y. Feb. 2, 1990) .............................................................................14

*Wells Fargo Bank, N.A. v. CCC Atl., LLC*,
   905 F. Supp. 2d 604 (D.N.J. 2012) .........................................................................................7

*Wilmington Trust, Nat'l Ass'n v. Winta Asset Mgmt. LLC*,
   2020 WL 5802365 (S.D.N.Y. Sept. 28, 2020) .................................................................7, 12

**Rules**

Rule 66 of the Federal Rules of Civil Procedure ...................................................................5, 6, 7

**Other Authorities**

Trigild IVL Group, LLC's website (https://www.trigild.com/) ....................................................17

Trigild IVL Group, LLC's website (https://www.trigild.com/team/ian-lagowitz) [both last
   accessed April 5, 2023] ........................................................................................................17

Plaintiff Kairos Credit Strategies Operating Partnership, LP ("**Plaintiff**"), respectfully submits this memorandum of law in support of its application, brought by Order to Show Cause, pursuant to Rule 66 of the Federal Rules of Civil Procedure ("**FRCP**") seeking (i) the appointment of a receiver for that certain real property and improvements thereon located at 57 East 55th Street, New York, New York 10022 (Block 1291, Lot 127), as more particularly described in the Mortgage annexed as Exhibit H to the Complaint (the "**Mortgaged Premises**"),[1] along with the interest of defendant The Friars National Association, Inc. ("**Borrower**") in the buildings, structures, fixtures, and other improvements now or hereafter located on the Mortgaged Premises, as well as the Land, Improvements, Equipment, Rents, Leases, Personal Property, Licenses and Permits, and other collateral, which specifically includes valuable personal property collateral, granted by the Mortgage and the Loan Agreement (each as defined on pages two through five of the Mortgage and in Sections 1.1 and 7.1 of the Loan Agreement, collectively referred to as the "**Borrower's Assets**" or the "**Mortgaged Property**"); and (ii) for such other and further relief as the Court deems just and proper (the "**Motion**").[2]

## PRELIMINARY STATEMENT

A receiver is necessary to protect the Mortgaged Premises and Mortgaged Property from loss during the pendency of this foreclosure action based upon, among other things, Borrower's (i) failure to timely pay the monthly payment due to Plaintiff in March of 2023, (ii) apparent abandonment of the Mortgaged Premises and its own business operations, (iii) failure to maintain and protect the Mortgaged Premises and Mortgaged Property, (iv) failure to retain a property

---

[1] Upon information and belief, the Mortgaged Premises are building known as the "Martin Erdmann House," a designated a New York City Landmark, which at one time housed the venerable New York Friars Club, a historic comedy club founded in 1904, famous for its comedy roasts, and led by the likes of Larry King, Jerry Lewis, Frank Sinatra, and Ed Sullivan. Recently, and as evidenced in this Complaint, the New York Friars Club has fallen on hard times financially.

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in are defined in the Declaration of Raymond Hu a/k/a Zilong Hu dated April 7, 2023 and submitted herewith (the "**Hu Decl.**" or "**Hu Declaration**").

1

manager for the Mortgaged Premises, (v) allowing several judgments to be obtained which constitute liens against the Mortgaged Premises, (vi) apparent removal of several items of Mortgaged Property from the Mortgaged Premises, and (vii) failure to adequately insure the Mortgaged Premises.

As set forth in the Complaint and in the Hu Declaration, multiple Events of Default have occurred and are continuing under the Loan Documents, and the amounts due under the Loan have not been repaid, despite Plaintiff's due demand. Upon the occurrence of such Events of Default, Borrower, as part of the Mortgage, explicitly consented to the appointment of a receiver, without notice and without regard to the adequacy of the Loan's security. Where, as here, a mortgage contains such a clear and unambiguous covenant entitling a lender to the appointment of a receiver, it is well-established that a receiver should be appointed in accordance with Rule 66 of the FRCP. As such, the Court should enforce the terms of the Loan Documents and appoint a receiver for the Mortgaged Premises and Mortgaged Property.

In addition to Borrower's express consent to appointment of a receiver upon its default and Borrower's clear defaults under the Loan Documents, the Mortgaged Premises, the Mortgaged Property, and Plaintiff have been subjected to irreparable injury and will continue to be subjected to further injury absent the appointment of a receiver to prevent further loss. Specifically, Borrower appears to have abandoned the Mortgaged Premises and no longer manages or maintains the Mortgaged Premises, much less protects the Mortgaged Premises or personal property collateral from loss. Despite the presence of exposed wiring and breaker boxes with missing electrical panel covers, flooding in the sub-basement, water damage, as well as the deterioration of the ceilings, and the presence of trash, rodents, and roaches, Borrower is no longer adequately insuring the Mortgaged Premises from loss and has admitted it is unable to afford to manage or otherwise

protect the Mortgaged Premises or Mortgaged Property. Additionally, the Mortgaged Premises contains the Mortgaged Property, which has several items of personal property of significant value, which is subject to loss absent proper maintenance and protection, and which appears to have already been removed from the Mortgaged Premises without the written consent of Plaintiff. As such, Plaintiff respectfully requests that the Court grant its Motion and appoint a receiver for the Mortgaged Premises and Mortgaged Property.

## ARGUMENT

Rule 66 of the FRCP empowers this Court to appoint a receiver in accordance "with the historical practice in federal courts or with a local rule." Fed. R. Civ. P. 66; *Wilmington Trust, Nat'l Ass'n v. Winta Asset Mgmt. LLC*, 2020 WL 5802365, at *1 (S.D.N.Y. Sept. 28, 2020) ("A federal court has the power in equity to appoint a receiver in order to protect a party's interest in the property."); *accord Wells Fargo Bank, N.A. v. CCC Atl., LLC*, 905 F. Supp. 2d 604, 614 (D.N.J. 2012) (discussing the district court's "broad discretion in appointing a receiver"). The appointment of a receiver is warranted here because Borrower expressly consented to the appointment of a receiver in the underlying Loan Documents and because Plaintiff easily establishes the need for a receiver, given that there is imminent danger of the property being irreparably harmed due to, among other things, Borrower's apparent abandonment of the Mortgaged Premises and Mortgaged Property, as well as the lack of proper maintenance, protection, and adequate insurance coverage of the Mortgaged Premises and Mortgaged Property.

## BORROWER EXPRESSLY CONSENTED TO THE APPOINTMENT OF A RECEIVER UPON DEFAULT

It is well established that federal courts may appoint a receiver where a note or security agreement authorize the remedy. *See U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC*, 866 F.

3

Supp. 2d 247, 250 (S.D.N.Y. 2012) ("[T]he existence of a provision authorizing the application for a receiver in the event of a default, strongly supports the appointment of a receiver when there is a default.") (internal citation and quotation marks omitted); *CCRF 2007-MF1 E. 53 Complex, LLC v. E. 53 BSD LLC*, 2020 WL 13133639, at *13 (E.D.N.Y. Dec. 18, 2020) (appointing receiver where defendants explicitly consented to the receiver's appointment upon their default under the applicable loan documents); *Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93, 97-98 (2d Cir. 1988) (holding it is "entirely appropriate" for a lender to seek the appointment of a receiver upon the occurrence of multiple of events of default triggering its right to a receiver under the loan documents). Furthermore, where, as here, the mortgage explicitly authorizes the appointment of a receiver in a foreclosure action, "[p]roof of the inadequacy of the security and of the probability of success of the action is not required" for the appointment of a receiver. *Meyer v. Indian Hill Farm, Inc.*, 258 F.2d 287, 293-94 (2d Cir. 1958).

Pursuant to Section 21(a)(ii) of the Mortgage, upon the occurrence of an Event of Default, Borrower consented to the appointment of a receiver on Plaintiff's application. Specifically, Section 21(a)(ii) provides that upon the occurrence of an Event of Default, Plaintiff may:

> To the extent permitted by applicable law, Lender may, as attorney-in-fact or agent of Mortgagor, or in its own name as Lender or by the appointment of a receiver in accordance with applicable law, hold, lease, manage, operate or otherwise use or permit the use of all or any portion of the Mortgaged Property and conduct the business, if any, thereof, either by itself or by other persons, firms, entities or agents, in such manner, for such time and upon such other terms as Lender may deem to be prudent and reasonable under the circumstances (making such repairs, alterations, additions and improvements thereto and taking any and all other action with reference thereto, from time to time, as Lender shall deem necessary or desirable) and to exercise the powers described herein. Lender may apply all Rents and other amounts collected by Lender in connection therewith in accordance with the provisions hereof. Such remedies may be exercised cumulatively and concurrently, and in this respect each of Lender shall be entitled to avail itself of the benefits and rights stated herein.

Mortgage § 21(a)(ii) (Compl. at Ex. H).

Additionally, Section 21(b) also provides for the appointment of a receiver:

> Prior to, upon or at any time after, commencement of foreclosure of the lien, security title and security interest provided for herein or any legal proceedings pursuant hereto, Lender may make application to a court of competent jurisdiction for appointment of a receiver of the Mortgaged Property. Such application may be made as a matter of strict right and without notice to Mortgagor (unless notice is required by applicable law and such right of notice may not be waived) or regard to the adequacy of the Mortgaged Property or insolvency of Mortgagor or any person who may be legally or equitably liable to pay the Obligations and without giving bond to Mortgagor (unless bond is required by applicable law and such right of bond may not be waived, in which case, such bond shall be in the minimum amount required by applicable law), and Mortgagor does hereby irrevocably consent to such appointment. Any such receiver shall have all the usual powers and duties of receivers in similar cases, including the full power to rent, maintain and otherwise operate the Mortgaged Property all upon such terms as may be approved by the court, and shall apply the Rents in accordance with the provisions of this Mortgage.

Mortgage § 21(b); *see also* Assignment of Leases at p.3 ("[Plaintiff] shall have the right and authority, without further notice whatsoever to [Borrower] and without regard to the adequacy of the security therefore, to: (a) make application to a court of competent jurisdiction for appointment of a receiver for all or any part of the [Mortgaged Property], as particularly set forth in the [Mortgage]….") (Compl. at Ex. I).

Thus, Borrower expressly consented to the appointment of a receiver upon the occurrence of an Event of Default. As set forth in detail in the Complaint and the accompanying Hu Declaration, multiple Events of Default have occurred under the Loan Documents triggering Plaintiff's right to appointment of a receiver. These Events of Default, include, but are not limited to, the following:

- <u>The Payment Defaults.</u> Pursuant to the Loan Agreement, Borrower is required to make a payment to Plaintiff of interest in arrears on the principal balance of the Loan at a per annum rate equal to the Interest Rate, as defined therein, on each Payment Date (each a "Monthly Debt Service Payment"), as defined therein, occurring in August 2021 on each payment date thereafter to and including the Maturity Date, as defined therein. Borrower has defaulted on this obligation by

failing to pay the Monthly Debt Service Payment due in March of 2023 and every Monthly Debt Service Payment thereafter. *See* Compl. at ¶¶ 39-44; Hu Decl. at ¶¶ 32-37.

- The Insurance Defaults. Pursuant to the Loan Agreement and the Mortgage, Borrower is required to maintain adequate insurance coverage of the Mortgaged Premises. Borrower has defaulted on this obligations by failing to maintain adequate insurance coverage of the Mortgaged Premises. *See* Compl. at ¶¶ 45-49; Hu Decl. at ¶¶ 38-42.

- The Care and Use Defaults. Pursuant to the Loan Agreement and the Mortgage, Borrower is required to keep the Mortgaged Premises in good condition and repair and to protect the Mortgaged Premises from waste, impairment, and/or deterioration. Borrower is further obligated to notify Lender of any such waste, impairment, and/or deterioration. Borrower has defaulted on these obligations by (i) failing to keep the Mortgaged Premises in good condition and repair, (ii) failing to protect the Mortgaged Premises from waste, impairment, and/or deterioration, and (iii) failing to notify Lender of any such waste, impairment, and/or deterioration. Specifically, Plaintiff is aware that the Mortgaged Premises are partially flooded, have exposed electrical wiring and breaker boxes, have damage to ceilings, show the presence of rodents and roaches, have trash throughout, among other issues. *See* Compl. at ¶¶ 50-57; Hu Decl. at ¶¶ 43-50.

- The Asset Disposal Defaults. Pursuant to the Loan Agreement, Borrower is not permitted to convey, sell, lease, license, assign, transfer, or otherwise dispose of any of Borrower's assets without the prior written consent of Plaintiff. Borrower has defaulted on this obligation by selling, removing, transferring, or otherwise disposing of several of Borrower's assets without obtaining the prior written consent of Plaintiff. *See* Compl. at ¶¶ 58-60; Hu Decl. at ¶¶ 51-53.

- The Change of Business Default. Pursuant to the Loan Agreement, Borrower is not permitted to suspend or change a substantial portion of its business. Borrower has defaulted on this obligation by suspending a substantial portion of its business. *See* Compl. at ¶¶ 61-63; Hu Decl. at ¶¶ 54-56.

- The Management Default. Pursuant to the Loan Agreement, Borrower is not permitted to modify, amend, terminate, or cancel any management contracts for the Mortgaged Premises without prior written approval of Plaintiff. Borrower has defaulted on this obligation by modifying, amending, terminating or canceling the management contract for the Mortgaged Premises without the prior written consent of Plaintiff. Specifically, although the Mortgaged Premises were once managed by a property manager, the Mortgaged Premises are no longer managed by a property manager, and Plaintiff did not provide any prior written consent for such change in management. *See* Compl. at ¶¶ 64-66; Hu Decl. at ¶¶ 57-59.

- <u>The Judgment Defaults.</u> Pursuant to the Loan Agreement, Borrower is not permitted to be subject to any judgment adversely affecting its business, properties or assets, operations, or condition (financial or otherwise). Further, Borrower was obligated to inform Plaintiff of the presence or threat of an action or suit which, if adversely determined against Borrower, could expect to have a Material Adverse Effect throughout the duration of the Loan. Borrower defaulted on this obligation by being subject to multiple judgments that adversely affect its business, properties or assets, operations, or condition (financial or otherwise). Borrower further defaulted on this obligation by failing to inform Plaintiff of the suits that resulted in such judgments, which do, in fact, have Materially Adverse Effects on Plaintiff. *See* Compl. at ¶¶ 67-72, Ex. O; Hu Decl. at ¶¶ 60-65.

Despite notice of the Payment Defaults, Borrower has not cured its defaults or paid the Loan's outstanding balance. *See* Compl. at ¶ 43, Ex. M; Hu Decl. at ¶ 36. Therefore, in accordance with the explicit terms of the Loan Documents, which constitute a binding commercial contractual agreement between sophisticated parties, Plaintiff is entitled to the appointment of a receiver to, among other things, maintain the Mortgaged Premises and Mortgaged Property in good condition and repair, exercise the rights and powers of Borrower with respect to the Mortgaged Premises and Mortgaged Property, and prevent further loss to Plaintiff's collateral.

## PLAINTIFF IS ENTITLED TO THE APPOINTMENT OF A RECEIVER BASED UPON THE IMMINENT DANGER OF LOSS AND PLAINTIFF'S LIKELIHOOD OF SUCCESS ON THE MERITS

Even absent a contractual provision giving rise to Plaintiff's entitlement to a receiver, the appointment of a receiver is appropriate in this action. Courts consider the following factors when assessing the need for a receivership:

> [1] [f]raudulent conduct on the part of defendant; [2] the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; [3] the inadequacy of the available legal remedies; [4] the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and, [5] in more general terms, plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property.

*Nesbitt Bellevue Prop. LLC*, 866 F. Supp. 2d at 249-50; *Winta Asset Mgmt. LLC*, 2020 WL 5802365, at *1 (collecting cases). Every factor, outside of fraudulent conduct on the part of Borrower, is present here. *U.S. Bank Nat. Ass'n v. Nesbitt Bellevue Prop. LLC*, 866 F. Supp. 2d 247, 250 (S.D.N.Y. 2012) ("courts have appointed receivers even where there was no evidence of fraud.") (internal citation and quotation marks omitted).

### A. **Borrower has Failed to Make Numerous Required Disclosures**

There are numerous examples of Borrower failing to make disclosures regarding threatened litigation, pending litigation, and judgments affecting the Mortgaged Premises and Mortgaged Property, all of which are required under the Loan Documents.

First, although Borrower was obligated, at all times throughout the pendency of the Loan to inform Plaintiff of, among other things, the existence of a judgment or other claim in an amount in excess of $50,000.00 becomes a Lien or encumbrance upon any material portion of any Loan Party's assets or any Borrower Collateral, Borrower wholly failed to inform Plaintiff of the Union Judgment, which is in the amount of $153,430.64, and was incurred on February 27, 2023. *See* Loan Agreement at §§ 3.29, 8.1(i); Compl. at ¶¶ 8, 71, Ex. O. Upon information and belief, the legal proceeding to obtain the Union Judgment was ongoing throughout the term of the Loan, yet Borrower failed to disclose it at any time to Plaintiff.

Second, although Borrower represented and warranted that it was not subject to any judgment, order, or decree that materially and adversely affected its business, properties or assets, operations, or condition (financial or otherwise) at any time throughout the term of the Loan, Borrower was, in fact, subject to the Judgments, which do, at the very least, adversely affect its financial condition. *See* Loan Agreement at §§ 3.29, 3.4; Compl. at ¶¶ 4-8, 71, Ex. O.

Third, although Borrower represented and warranted that there were no actions, suits or proceedings pending in which service of process has been directly effectuated or, to the best knowledge of Borrower, threatened against or affecting Borrower, at law or in equity or before or by any Governmental Authority or third party payor which are undisclosed and involve any of the transactions contemplated herein and which, if adversely determined against Borrower could reasonably be expected to have a Material Adverse Effect, as that term is defined in the Loan Agreement, throughout the term of the Loan, Borrower was, in fact, subject to numerous suits pending at law and in front of governmental authorities, which resulted in the Judgments, and which could have been expected to have a Material Adverse Effect. *See* Loan Agreement at §§ 1.1, 3.29, 3.3; Compl. at ¶¶ 4-8, 71, Ex. O.

Borrower's failures to inform Plaintiff of these actions and judgments may not constitute intentional misrepresentations or rise to the level of fraud, but in light of the numerous representations and warranties contained in the Loan Documents as detailed above, these omissions tend to favor the appointment of a receiver over the Mortgaged Premises and Mortgaged Property. Because of Borrower's failure to make critical disclosures from the onset of the Loan, there is significant concern as to, among other things, the likelihood that Borrower will make adequate disclosures regarding its duties under the Loan Documents, including specifically its obligations to protect the Mortgaged Premises and the Mortgaged Property. Borrower's conduct demonstrates that a receiver is necessary to properly operate, manage, and protect the Mortgaged Premises and Mortgaged Property in lieu of Borrower's omissions as to several required disclosures under the Loan Documents.

**B.     There is Imminent Danger of Loss**

9

There is specific and imminent danger of loss because of Borrower's cessation of its business operations, apparent abandonment of the Mortgaged Premises, failure to protect and maintain the Mortgaged Premises and Mortgaged Property, failure to adequately insure the Mortgaged Premises, and the apparent loss and/or removal and/or disposition of the Mortgaged Property. A receiver should be appointed to protect the Mortgaged Premises and Mortgaged Property because of such danger of loss. *United States v. Zitron*, 1990 WL 13278, at *2 (S.D.N.Y. Feb. 2, 1990) ("Perhaps the strongest factor militating toward receivership is the corporations' uncertain economic future. As eminent commentators have recently noted, '[t]he need for a receivership is obvious when ... leaving the property in the custody of the judgment debtor creates a risk of fraud or insolvency.'") (citations omitted).

Specifically, Borrower is the fee owner of the Mortgaged Premises and the Mortgaged Property, as that term is defined in the Mortgage, which includes, but is not limited to valuable memorabilia, collectibles, art, furniture furnishings, carpets, chandeliers, and any other valuables belonging to Borrower. *See* Compl. Ex. H at pp.2-5. Plaintiff has a mortgage security interest in the Mortgaged Premises and the Mortgaged Property by virtue of the Mortgage. *See id.* Consequently, Borrower's failure to maintain, manage, and protect the Mortgaged Premises and Mortgaged Property poses a specific and imminent danger of loss to the Mortgaged Premises and Mortgaged Property and to the value of Plaintiff's mortgage security interest therein. Indeed, upon investigation of the Mortgaged Premises, such loss has already begun, as the Mortgaged Premises are beginning to suffer deterioration, including flooding, water damage, damage to ceilings, proliferation of rodents and roaches, presence of trash and other damages that will continue and will get worse every day the Mortgaged Premises are without a receiver appointed to preserve and protect the Mortgaged Premises, especially in light of the exposed wiring and breaker boxes. *See*

10

Compl. at ¶ 52, Ex. N; Hu Decl. at ¶ 45. It appears that many valuable items of Mortgaged Property have been removed from the Mortgaged Premises without Plaintiff's consent. *See* Compl. at ¶ 52, Ex. N; Hu Decl. at ¶ 45. Borrower's cessation of its business operations, failure to adequately insure the Mortgaged Property, apparently removal or loss of items of Mortgaged Property, and representations as to its inability to afford a property manager, all show that Borrower will not adequately protect and maintain the Mortgaged Premises or Mortgaged Property. *See* Compl. at Ex. O; Hu Decl. at ¶¶ 73-79. Accordingly, the Mortgaged Premises and Mortgaged Property are subject to imminent danger of loss and are, in fact, already exhibiting loss. *See* Hu Decl. at ¶¶ 73-79. Appointment of a receiver will protect the Mortgaged Premises and Mortgaged Property from such loss. *See id.* at ¶¶ 80-82.

## C. Plaintiff's Other Legal Remedies Are Inadequate to Protect its Interests

Plaintiff's legal remedies, including foreclosure, are not sufficient to protect its security interest in the Mortgaged Premises and Mortgaged Property. While this foreclosure action is pending, absent a receiver, Borrower will continue to completely neglect the Mortgaged Premises and Mortgaged Property, or actively remove the Mortgaged Property, causing Plaintiff's collateral to diminish in value. *See* Hu Decl. at ¶¶ 45, 74-79. As such, a receiver is necessary to take immediate possession of the Mortgaged Premises and Mortgaged Property to ensure that Plaintiff's collateral is preserved until this action is resolved. *See id.* at ¶ 80.

## D. Plaintiff Will Be Severely Harmed If a Receiver is Not Appointed

Based upon Borrower's apparent abandonment and neglect of the Mortgaged Premises and Mortgaged Property, as well as Borrower's disregard for its obligations under the Loan Documents, and the associated risks resulting therefrom, denying the appointment of a receiver could result in a significant loss to Plaintiff. *See id.* at ¶¶ 45, 74-79. Indeed, the severe harm to

11

Plaintiff that would result from the denial of a receiver, is much greater than any potential injury to Borrower if a receiver is appointed, because the appointment of a receiver will only serve to protect the Mortgaged Premises and Mortgaged Property, which is a benefit to all parties.

### E. Plaintiff is Likely to Succeed in this Action

Finally, Plaintiff has shown its likelihood of ultimate success in this action. In a foreclosure action under New York law, a plaintiff establishes its prima facie entitlement to judgment by producing evidence of the mortgage, the unpaid note, and the defendant's default. *Gustavia Home, LLC v. Rutty*, 720 F. App'x 27, 28 (2d Cir. 2017) (citations omitted). Here, Plaintiff has established each of these elements in the Complaint: (i) Borrower executed the Loan Documents; (ii) Plaintiff is the owner and holder of the Loan Documents, including the Note and the Mortgage; and (iii) Borrower defaulted under the Loan Documents. *See* Hu Decl. at ¶¶ 28, 6-66.

Therefore, Plaintiff has not only demonstrated its likelihood of success and its entitlement to the appointment of a receiver under the Loan Documents, but has also shown that numerous factors are present that warrant the appointment of a receiver to immediately protect the Mortgaged Premises.

### TRIGILD IS WELL-QUALIFIED TO SERVE AS RECEIVER

As set forth in the Hu Declaration, Trigild IVL Group, LLC, was specifically chosen for its experience in connection with receivership and management commercial properties, like the Mortgaged Premises. Trigild IVL Group, LLC is one the most prominent receivers across the nation and regularly acts a receiver for high profile and iconic properties like the Mortgaged Premises. Trigild IVL Group, LLC's specific qualifications are detailed in Exhibit O to the Hu Declaration. Ian Lagowitz is a founder and managing partner of Trigild IVL Group, LLC and is well qualified to serve as receiver for the Mortgaged Premises and the Mortgaged Property. *See*

*generally* Mr. Lagowitz's accompanying declaration; Trigild IVL Group, LLC's website (https://www.trigild.com/) and a summary of Mr. Lagowitz's qualifications on Trigild IVL Group, LLC's website (https://www.trigild.com/team/ian-lagowitz) [both last accessed April 5, 2023]). Given Trigild IVL Group, LLC's specific experience, Plaintiff respectfully requests that Trigild IVL Group, LLC be appointed receiver for the Mortgaged Premises. *See generally* Hu Decl. at ¶¶ 81-82, Ex. 1.

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court grant its Motion in its entirety and immediately appoint Trigild IVL Group, LLC as receiver for the Mortgaged Premises.

Dated: New York, New York
       April 7, 2023

                                    **AKERMAN LLP**

                          By: */s/ Mark S. Lichtenstein*
                              Mark S. Lichtenstein, Esq.
                              1251 Avenue of the Americas, 37th Floor
                              New York, NY 10020
                              Tel. No. (212) 880-3800
                              mark.lichtenstein@akerman.com

                              *Attorney for Plaintiff Kairos Credit Strategies*
                              *Operating Partnership, LP*

69660106;6