UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KAIROS CREDIT STRATEGIES OPERATING PARTNERSHIP, LP,
Plaintiff,

-v-

THE FRIARS NATIONAL ASSOCIATION, INC., *et al.*,
Defendants.

23-CV-2960 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Kairos Credit Strategies Operating Partnership, LP ("Kairos," "Lender," or "Plaintiff") seeks emergency relief in the form of a preliminary injunction appointing a receiver to oversee and manage real property located at 57 East 55th Street, New York, New York 10022 (the "Property"). Defendant the Friars National Association, Inc. ("Friars Club" or "Borrower"), the current occupant of the Property, opposes the appointment. For the reasons that follow, Plaintiff's motion for emergency appointment of a receiver is granted.

## I. Background

The following sets forth the uncontested facts and allegations relevant to appointment of a receiver. Friars Club entered into a mortgage of $9,000,000 for the Property on February 21, 2020. (ECF No. 1 ¶ 13.) That mortgage was assigned to Kairos on June 25, 2021, which simultaneously executed an amendment, refinancing certain extant debts, and bringing Friars Club's obligations to Kairos to $13,000,000. (ECF No. 1 ¶ 24; ECF No. 1-7.) Kairos alleges that, as of March 2023, there have been multiple events of default, entitling Kairos to the appointment of a receiver to protect its interests under Federal Rule of Civil Procedure 66.

On April 7, 2023, Kairos initiated this action to a foreclose on the Property. (*See* ECF No. 1 ¶ 74.) On April 12, 2023, Kairos filed the instant emergency motion, seeking a preliminary injunction appointing Trigild IVL Group, LLC ("Trigild") as receiver on the basis of Friars Club's defaults under several provisions of the mortgage agreement, discussed below.[1] (ECF No. 26.) The same day, the Court issued an order to show cause why a receiver should not be appointed, and subsequently it held an in-person hearing in which both Friars Club and Kairos appeared through counsel, produced evidence, and were heard. (*See* ECF No. 29.)

Friars Club does not contest that there have been multiple events of default under the loan agreement. These include monthly payment defaults in violation of Section 2.4 of the mortgage since March 1, 2023, and judgment lien defaults in violation of Section 8.1 of the mortgage agreement, which provides for default in the event of liens in excess of $50,000 on the property. Friars Club is subject to multiple judgments, including a union judgment obtained by Local 6 in the amount of approximately $150,000. (*See* ECF No. 65; ECF No. 1-13; ECF No. 49; ECF No. 1-14; ECF No. 1-15.) Friars Club concedes that these are events of default, which triggered a contractual right to seek receivership.[2] (*See* ECF No. 36 at 4 – 5.) Kairos has also presented evidence (albeit contested by Friars Club) of additional defaults, including (1) that the Property has been effectively abandoned, (2) that there has been damage and deterioration of the Property, including water and mold damage, (3) negative covenant defaults as a result of the sale or

---

[1] Because Friars Club does not address Trigild's qualifications and Kairos extensively briefed that issue, the Court deems Kairos's position on Trigild unopposed.

[2] Only one other named Defendant (of seven) has appeared. (*See* ECF No. 1 ¶¶ 3 – 9.) Hotel Restaurant & Club Employees and Bartenders Union Local 6 and Club Employees Pension Fund ("Local 6") represented to the Court during a telephone conference on May 23, 2023, that it takes no position on receivership, nor does Local 6 take a position in its papers. (*See* ECF No. 64.)

removal of assets at the Property without the Lender's consent; and (4) the failure to maintain adequate insurance coverage of the Property given its abandonment.

## II. Legal Standard

The party seeking receivership in a preliminary injunction posture "must demonstrate that it is likely to suffer possible irreparable harm if the requested relief is not granted and either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor." *CitiBank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93, 97 (2d Cir. 1988) (quoting *Coca-Cola Co. v. Tropicana Prods., Inc.*, 690 F.2d 312, 314 – 15 (2d Cir. 1982)).

Specifically, a federal court has the equitable power to appoint a receiver in order to protect a party's interest. *See* Fed. R. Civ. P. 66. While the Second Circuit has historically recognized receivership as a "drastic remedy," *Ferguson v. Tabah*, 288 F.2d 665, 674 (2d Cir. 1961), the courts of this circuit recognize five factors that are "relevant to establishing the need" for the appointment of a receiver:

> [1] Fraudulent conduct on the part of defendant; [2] the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; [3] the inadequacy of the available legal remedies; [4] the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and [5], in more general terms, plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property.

*U.S. Bank Nat'l Ass'n v. Nesbitt Bellvue Prop. LLC*, 866 F. Supp. 2d 247, 249 – 50 (S.D.N.Y. 2012) (quoting *Versames v. Palazzolo*, 96 F. Supp. 2d 361, 365 (S.D.N.Y. 2000)).

## III. Discussion

Plaintiff does not seek to justify receivership on the basis of the first factor, fraud.[3] The Court finds, however, that all of the additional factors favor the appointment of a receiver.

First, there is imminent danger of the Property's being injured or diminished in value. While the parties dispute the degree of deterioration of the Property, each accusing the other of submitting "curated" photographs, certain facts are clear not only by a preponderance of the evidence but by clear and convincing evidence: (1) the Property has been largely vacant for a number of months, with no regular activity as an operating club; (2) the Property has no property manager; (3) there is no operating phone line to the Property; (4) there is some degree of water damage in the basement, and as a result, the water supply to the Property has been shut off; and (5) some portions of the Property are in disrepair and unclean as a result of months of disuse.

It is unnecessary, however, for the Court to resolve the parties' dispute regarding the exact physical condition of the Property. That is because the lack of adequate insurance coverage alone establishes imminent danger. The insurance contract provides that if the Property is "vacant" for more than 60 consecutive days, the insurer "will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss: (a) Vandalism; (b) Sprinkler leakage, . . . (c) Building glass breakage; (d) Water damage; (e) Theft; or (f) Attempted theft." (ECF No. 49 at 16 ¶ 6(b).) The insurance contract specifically provides that the Property is "vacant" "unless *at least 31% of its total square footage* is: (i) Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or (ii) *Used by the*

[3] The Court thus need not consider fraud. *See* 12 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2983 (3d ed. 2023) (fraud not a necessary condition for appointment, just a factor).

*building owner to conduct customary operations*." (ECF No. 49 at 15 ¶ 6(a)(1)(B) (emphasis added).)

The Property would very likely be deemed currently "vacant" under the policy's clear language. The Property therefore faces serious and imminent risks of withstanding substantial and damaging losses without insurance. It is apparent that the "customary operations" of the Friars Club are not occurring at the Property to disprove vacancy. The Second Circuit has interpreted "customary operations" clauses as part of vacancy provisions to insurance contracts to refer to the "commonly practiced activity" of a property at the time the insurance contract was entered. *Keren Habinyon Hachudosh D'Rabeinu Yoel of Satmar BP v. Philadelphia Indemnity Ins.*, 462 Fed. App'x 70, 73 (2d Cir. 2012) (summary order). Friars Club has not hosted regular events at the Property in several months—as evidenced by the judgment obtained by its service workers union—and there is no evidence or other indication that it currently has any paying members.

Friars Club argues that because a meeting of the Friars Club "board" evidently has occurred at the Property over the last 60 days, it is not vacant. This argument fails. First, Friars Club has not produced sufficient evidence, or even representations, as to the nature of these meetings to permit the Court to conclude they were in keeping with the Property's "customary operations." But even if established, the Second Circuit has rejected use of one-off meetings as an end-run around a virtually identical vacancy provision. In *Keren*, the court rejected a meeting at a disused school, which included 25 teachers, as sufficient to show the school was being used for its core purpose of education. *Id.*; *see also id.* ("[A] one day event is insufficient to defeat the application of the policy exclusion . . . because it is undisputed that the defining element of [its traditional] operation[s] . . . did not take place that day.").

Friars Club also points to an email exchange with the Property's third-party insurance broker, arguing that it shows there is no present vacancy. (ECF No. 59-1.) But this is irrelevant and unpersuasive. First, this is not an email involving the actual insurer, it appears to involve a third-party insurance agent or broker. As such, it is essentially non-probative, just the opinion of a business associate of the Friars Club. Second, the email produced is highly equivocal; indeed, it expressly states that it cannot guarantee what the insurer's interpretation of vacancy would be but that the brokers "are happy to present the matter to the insurer to confirm that their interpretation of the clause." (ECF No. 59-1 at 1.) In the face of the express terms of the insurance contract and clear circuit law, this is not sufficient.

The Court also finds the third factor, unavailability of a legal remedy, to be satisfied. Plaintiff has established water damage to the property; and water leakage, smoke damage, vandalism, even fires and worse events are unfortunately commonplace in abandoned Manhattan real estate. And contextual facts make those dangers more likely: Friars Club also fails to contest that there is no property manager who regularly checks on the safety and security of the Property, making accidents even more probable. Because Friars Club does not dispute that it is insolvent or nearly insolvent, this injury is irreparable because the Property is the only asset of value against which creditors like Kairos can realistically recover.

The fourth factor, which calls for a comparison of the probability of harm to the Plaintiff and to Friars Club, further militates toward appointment. Here, Kairos alleges significant risks of harm stemming from the lack of adequate insurance coverage. By contrast, were a receiver appointed, Friars Club claims only the risk of a vague injury based on the speculative assertion that receivership appointment could make it more difficult to liquidate the Property. (*See* ECF No. 36 at 2 – 3.) However, Friars Club also openly acknowledges that it has been seeking to sell

the Property for multiple years, to no avail. Additionally, the Second Circuit has recognized that receivership should be typically granted, not denied, in the context of a mortgage with terms that were virtually identical to this one,[4] suggesting a significant diminution of Friars Club's interest due to its voluntary accession to a receivership remedy in the bargaining process. *See Nyland,* 839 F.2d at 97. The *Nyland* court concluded that if, as here, "it is undisputed that several events of default had occurred," then "this [receivership] provision strongly supports the appointment of a receiver." *Id.* The same result is warranted here.

The fifth factor, which restates the preliminary injunction inquiry regarding likelihood of success on the merits and irreparable harm to Plaintiff, is satisfied for reasons stated above. Thus, the Court finds that, both under a preponderance of the evidence standard and under a clear and convincing evidence standard, Kairos has sufficiently demonstrated the possibility of irreparable injury as well as likelihood of success on the merits.

**IV. Conclusion**

For the foregoing reasons, Plaintiff's Emergency Motion to Appoint Trigild IVL Group, LLC as Receiver for 57 East 55th Street, New York, New York 10022 is GRANTED. The Clerk of the Court is respectfully directed to close the docket entry at ECF Number 26.

SO ORDERED.

Dated: May 26, 2023
New York, New York

J. PAUL OETKEN
United States District Judge

[4] Upon initiation of foreclosure, the mortgage provides that the "Lender may make application to a court . . . for appointment of a receiver," and that "Mortgagor does hereby irrevocably consent to such appointment." (ECF No. 1-8 § 21(b).)