UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KAIROS CREDIT STRATEGIES OPERATING PARTNERSHIP, LP,<br><br>         Plaintiff,<br><br>-against-<br><br>THE FRIARS NATIONAL ASSOCIATION, INC., et al.,<br><br>         Defendants. | 23-cv-2960 (AS)<br><br>MEMORANDUM OPINION AND ORDER |

ARUN SUBRAMANIAN, United States District Judge:

  This case involves a series of loans made to the Friars National Association, Inc. ("Friars Club"). The Friars Club defaulted on those loans, and now Kairos Credit Strategies Operating Partnership, LP ("Kairos"), which bought up the Club's loans and lent it more cash, wants to foreclose on the Club's property at 57 East 55th Street. After some initial skirmishes, Kairos moved for summary judgment. For the following reasons, Kairos's motion is GRANTED.

## BACKGROUND

### I. Factual background

  On August 28, 2018, the Friars Club got a $2 million note from 57 East 55th Street Funding Associates ("Funding Associates"). Dkt. 90-3. As security, it gave Funding Associates an interest in certain real and personal property located at 57 East 55th Street (collectively, "the property"). *Id.* Later, the Friars Club got four more $1 million loans from Funding Associates, all of which were secured by the property. Dkts. 90-4 to -11.

  In February 2020, Funding Associates assigned the mortgages, together with the notes, to Titan Capital ID, LLC ("Titan"). Dkts. 90-13 to -22. Titan also gave the Friars Club a $3 million loan secured by the property. Dkts. 90-23 to -24. In connection with that loan, the Friars Club executed a consolidated note, which recorded the total principal amount of $9 million. Dkt. 90-26. The Friars Club also executed a "Consolidation, Modification, and Extension of Mortgage, Assignment of Leases and Rents and Security Agreement," under which the Friars Club granted Titan a security interest in the property, assumed all obligations in the previous notes, and agreed that those notes were consolidated. *Id.*

  On June 25, 2021, the Friars Club received a $4 million loan from Kairos, secured by a mortgage on the property. Dkts. 90-30 to -31. The same day, Titan assigned its mortgages and the underlying notes to Kairos. Dkts. 90-27 to -28. And to restate its debts, the Friars Club executed a "Consolidated, Extended, Amended and Restated Promissory Note" in the total principal amount of $13 million. Dkt. 90-32 at 2. The Friars Club also executed a "Consolidated, Extended,

Amended and Restated Mortgage, Assignment of Rents, Security Assignment, and Financing Statement," granting Kairos a security interest in the property, assuming all obligations on the existing notes, and agreeing that all notes and mortgages were consolidated. Dkt. 90-33.

On March 1, 2023, the Friars Club failed to make a payment. Dkt. 90 ¶¶ 53–56; Dkt. 92-8 at 23:25–24:11. Two weeks later, Kairos sent the Friars Club a notice of default, noting the default and demanding it be immediately cured. Dkt. 90-37 at 2. The notice was returned unclaimed. Dkt. 90 ¶ 57. On March 30, 2023, Akerman LLP notified the Friars Club that "all of the Obligations under the Loan are hereby accelerated and immediately due and payable as a result of certain Events of Default, which are continuing." Dkt. 90-38 at 1–2.

## II. Procedural background

On April 7, 2023, Kairos sued the Friars Club, seeking to foreclose on the mortgage and the security interest in the Friars Club's personal property. Dkt. 1 at 16–20. Kairos also sought court appointment of a receiver. *Id.* at 20–23.

Kairos included as defendants various entities that could have a claim to the property:

- The City of New York Department of Environmental Control
- The New York State Department of Labor
- The New York State Tax Department
- The New York City Finance Administration
- The Hotel, Restaurant & Club Employees and Bartenders Union, Local 6 and Club Employees Pension Fund (the "Union" and "Fund")
- Twenty John Does

On May 18, 2023, the Union and Fund filed an answer and asserted several cross-claims. Dkt. 64. They said that the Friars Club and the Union are parties to a collective bargaining agreement, under which the Friars Club's successors and assigns are bound. *Id.* They argued that the Friars Club must make it a condition of any transfer of the property that the buyer, successor, and/or assign is bound to the agreement. They also asserted that they were entitled to $153,430.60.

On October 18, 2023, the Clerk of Court issued certificates of default as to the four city and state defendants. Dkts. 84–87.

On November 1, 2023, attorney Thomas Mullaney wrote a letter to the Court, explaining that he has a lien for $80,000 in unpaid legal fees. Dkt. 97. The same day, Michael Gyure also wrote to the Court, indicating that he is a judgment creditor of the Friars Club. Dkt. 96.

Previously, Kairos moved for emergency appointment of a receiver. Dkt. 26. The Court granted the motion, explaining that the Friars Club had conceded "multiple events of default" and the relevant factors favored receivership. Dkt. 66. Kairos now moves for summary judgment. Dkt. 88. Kairos also moves to strike the Friars Club and Union answers; refer the calculation of the amount of the judgment of foreclosure and sale to a magistrate judge; amend the caption to delete

New York Design Architects, L.L.P., and the non-answering defendants; and enter default judgment against certain defendants. *Id.* Because Kairos's briefing focused on the motion for summary judgment, the Court will defer resolution of these collateral issues until after the parties have had a chance to brief them.

## DISCUSSION

### I. The New York State defendants are dismissed from the case.

After reassignment of this case, the Court identified a jurisdictional issue. Kairos joined as defendants two state entities: the New York State Department of Labor and the New York State Department of Tax. The complaint alleges that the Labor Department has a $2,390.27 judgment against Kairos, and that the Tax Department is a "possible" creditor. Dkt. 1 ¶¶ 5–6. Kairos also alleges that the basis for this court's jurisdiction is diversity of citizenship. *Id.* ¶ 10. But "a state is not a 'citizen.'" *Moor v. Cnty. of Alameda*, 411 U.S. 693, 717 (1973). And the non-citizen status of states is often imputed to state entities too. Indeed, courts have already determined that the Tax Department does not have a "sufficiently independent existence" so that its citizenship can be considered separately. *See E. Sav. Bank v. Walker*, 775 F. Supp. 2d 565, 567–73 (E.D.N.Y. 2011); *Courchevel 1850 LLC v. Alam*, 2019 WL 9656366, at *6 (E.D.N.Y. Oct. 30, 2019), *report and recommendation adopted*, 464 F. Supp. 3d 475 (E.D.N.Y. 2020). A similar conclusion would seem to apply to the New York Labor Department, which many courts have held (albeit in a different context) is an "arm of the state." *Hardy v. New York State Dep't of Lab.*, 2019 WL 5693506, at *2 (S.D.N.Y. Nov. 1, 2019); *see also Jackson v. NYS Dep't of Lab.*, 709 F. Supp. 2d 218, 225–26 (S.D.N.Y. 2010).

The Court asked for briefing on whether the presence of these defendants destroys diversity jurisdiction here. Dkt. 115. The Friars Club failed to respond. The New York state defendants (who were served in this matter but never appeared) also did not respond. Kairos, however, agreed that the presence of these entities destroys diversity. Dkt. 116.

But all is not lost. "Federal Rule of Civil Procedure 21 allows a court to drop a nondiverse party at any time to preserve diversity jurisdiction, provided the nondiverse party is not 'indispensable' under Rule 19(b)." *CP Sols. PTE, Ltd. v. Gen. Elec. Co.*, 553 F.3d 156, 159 (2d Cir. 2009) (internal quotation marks and citations omitted). The Court does not find either the Tax Department or the Labor Department to be covered by Rule 19(b).[1] First, it is not even clear whether the Tax Department has a lien against the property. And the Labor Department's lien is de minimis. Second, "[t]he purpose of including lienholders as defendants in a mortgage foreclosure action is to enable a sale of the property free and clear of their liens, with the lienholders paid out of the proceeds of the sale according to their priority." *Walker*, 775 F. Supp. 2d at 574. Kairos has indicated its desire that the state defendants be dismissed and the property be sold subject to their liens.

---

[1] As amended in 2007, Rule 19(b) no longer uses the term indispensable.

Dkt. 116. By shaping the relief in this manner, the New York state defendants will not be prejudiced. As such, equity and good conscience weigh in favor of dismissing these defendants instead of the entire action.[2] So the claims against the New York state defendants are dismissed without prejudice, the parties will be terminated from this case, and any rights they have will be preserved for future adjudication.

## II. Kairos has established its prima facie entitlement to summary judgment.

"In a foreclosure action, under New York law, a plaintiff establishes its prima facie entitlement to summary judgment by producing evidence of the mortgage, the note, and the defendant's default." *Gustavia Home, LLC v. Rutty*, 785 F. App'x 11, 14 (2d Cir. 2019) (citing *Wells Fargo Bank, N.A. v. Walker*, 35 N.Y.S.3d 591, 592 (3d Dep't 2016)). In addition, "[w]here as here, the defendant contests standing to foreclose, the plaintiff must prove its standing as part of its prima facie showing." *Id.* (internal quotation marks and citation omitted). A plaintiff can do so by showing that, "when the action was commenced, it was either the holder or assignee of the underlying note." *Id.* (citation omitted).

While courts have referred to this issue as one of "standing," that should not be confused with Article III standing. The courts just mean that under New York law, a plaintiff needs to satisfy certain conditions before being able to pursue foreclosure. Kairos clearly has satisfied those conditions. It has produced the $4 million note it issued to the Friars Club. Dkts. 1-5, 90-30. And it has produced a notarized assignment of the mortgages securing the remaining $9 million in notes, dated June 25, 2021, before the commencement of this lawsuit. Dkt. 90-27 at 4. That document assigns from Titan to Kairos "those certain mortgages described in Schedule A" encumbering the property, "together with the note therein described or referred to." *Id.* at 5. "Courts have held that a mortgage assignment referencing the transfer of the mortgage 'together with the notes and bonds or obligations described in the Mortgage' is sufficient to assign both the Mortgage and underlying Note." *Wilmington Tr., Nat'l Ass'n v. Winta Asset Mgmt. LLC*, 2022 WL 2657166, at *6 (S.D.N.Y. July 8, 2022) (cleaned up); *see Wells Fargo Bank, N.A. v. 390 Park Ave. Assocs., LLC*, 2018 WL 4373996, at *7 (S.D.N.Y. Sept. 12, 2018) (same); *Chase Home Fin., LLC v. Miciotta*, 956 N.Y.S.2d 271, 272–73 (3d Dep't 2012) (same).[3]

---

[2] As in *Walker*, Kairos is cautioned that this decision "does not in any way determine whether a decision to foreclose upon the mortgage but not the liens would permit the borrower to claim that plaintiff foreclosed in a commercially unreasonable manner and thereby depressed the sales price of the property." 775 F. Supp. at 574 n.10.

[3] Kairos also has evidence that the $6 million in debt initially issued by Funding Associates was properly assigned to Titan. Kairos has produced the notarized assignments for all five mortgages securing the $6 million debt. Dkts. 90-13 to -17. And those mortgages have language assigning the mortgages "TOGETHER WITH the bonds or notes or obligations described in said mortgage, the debt and claims secured thereby and to grow thereon with the interest, and all rights to collect and receive such debt." Dkt. 90-13 at 4; Dkt. 90-14 at 4; Dkt. 90-15 at 4; Dkt. 90-16 at 4; Dkt. 90-

The Friars Club responds that "a transfer of the mortgage without the debt is a nullity." *Merritt v. Batholick*, 36 N.Y. 44, 45 (1867). That is true but irrelevant, as the mortgage assignment here transferred the underlying debt too. *Cf. id.* at 46 (discussing a situation where a mortgage assignment "describ[es] the mortgage alone"). The Friars Club cites no authority indicating that language similar to that in the mortgage assignment here was insufficient to transfer the underlying debt, and as discussed, many courts have held the opposite.

Because the mortgage assignment was sufficient to transfer the underlying notes, this Court need not address the Friars Club's argument that the allonges purporting to assign the notes were not firmly affixed to the notes as required by New York law. Dkt. 99 at 8. Even if the allonges were defective, the mortgage assignment is sufficient to establish standing. Indeed, other courts have reasoned similarly. *See Wilmington Trust*, 2022 WL 2657166, at *5–6 (explaining that a dispute about whether the allonges were firmly affixed did not preclude standing because the mortgage assignments transferred the underlying notes); *Miciotta*, 956 N.Y.S.2d at 1308 & n.1; *see also Broome Lender LLC v. Empire Broome LLC*, 197 N.Y.S.3d 208, 209 (1st Dep't 2023) (explaining that "plaintiffs were not required to establish standing through physical delivery of the note prior to the action's commencement or through the allonges purportedly annexed to the note" where they established standing by virtue of a "notarized assignment").

Kairos also has evidence of the mortgages, the notes, and the Friars Club's default. It has produced evidence that (1) the Friars Club got loans from various lenders secured by mortgages on the property, Dkts. 90-3 to -11 ($6 million Funding Associates loans), 90-23 to -24 ($3 million Titan loan), 90-30 to -31 ($4 million Kairos loan); (2) the mortgages that were initially issued to third parties were later assigned to Kairos, Dkts. 90-13 to -17 (assignment from Funding Associates to Titan), 90-27 (assignment from Titan to Kairos); and (3) as discussed, the associated notes were assigned to Kairos too, *id.* Courts have held similar showings sufficient. *Cf. Wilmington Tr.*, 2022 WL 2657166, at *4. Kairos has also produced evidence of the Friars Club's default. *See, e.g.*, Dkt. 90 at ¶¶ 53–56; Dkt. 92-8 at 23:25–24:11. Indeed, as the Court has already noted, the "Friars Club does not contest that there have been multiple events of default." Dkt. 66 at 2.

The Friars Club also raises in its papers various ill-explained challenges to the authenticity and admissibility of the loan and mortgage documents attached to Kairos's papers. The Club argues generally that the documents "cannot be a 'true and correct' copy of an original document." *See, e.g.*, Dkt. 106-1 ¶¶ 2, 6, 9. The Court finds these objections unfounded. First, the mortgages and assignments are self-authenticating because they are "attached to the recorded filing made with the New York City Department of Finance, which bears the appropriate seal and signature of a government official." *CIT Bank, N.A. v. Schiffman*, 2022 WL 912520, at *2 (E.D.N.Y. Mar. 29, 2022). In addition, the documents were properly authenticated by Raymond Hu, Jessica Hyman,

---

17 at 4. As discussed, that language is sufficient to assign both the mortgages and the underlying notes, and the Court need not address any argument about defects in the allonges.

and Christopher McCranie. Dkts. 90, 91, 103; *see* Fed. R. Evid. 901(b)(1); Fed. R. Evid. 902(11). And there is no real dispute concerning the who, what, when, where, and how of the loans and mortgages here. Indeed, Kairos had the Friars Club execute papers restating and confirming all the loans and mortgages when it executed its deal with the Club. Dkt. 90-32; Dkt. 90-33; *see* Fed. R. Evid. 901(b)(4). Finally, there is no hearsay issue because the mortgages and assignments "purport[] to establish or affect an interest in property." Fed. R. Evid. 803(14); *see Wilmington Tr., Nat'l Ass'n, as Tr. for Benefit of Registered Holders of Wells Fargo Com. Mortg. Tr. 2018-C44, Com. Mortg. Pass-Through Certificates, Series 20 v. 31 Prince St., LLC*, No. 22-CV-5855 (JGK), 2023 WL 3647397, at *2 (S.D.N.Y. May 25, 2023). As to the Kairos loan and mortgage documents, Kairos has also submitted declarations supporting the admission of these documents on business-record grounds. *See* Fed. R. Evid. 803(6); Dkts. 90, 91, 103. Finally, given the circumstances here, the loan and mortgage documents submitted with Kairos's summary judgment filing could be admitted under the residual exception to the hearsay rule. Fed. R. Evid. 807 (statement may be admitted if "supported by sufficient guarantees of trustworthiness" and if "more probative on the point" "than any other evidence that the proponent can obtain through reasonable efforts").

### III. The Friars Club fails to show that summary judgment is unwarranted.

Because Kairos has made its prima facie showing, "the burden then shifts to the defendant to demonstrate 'the existence of a triable issue of fact as to a bona fide defense to the action, such as waiver, estoppel, bad faith, fraud, or oppressive or unconscionable conduct on the part of the plaintiff.'" *Gustavia Home*, 785 F. App'x at 14 (quoting *Capstone Bus. Credit, LLC v. Imperia Family Realty, LLC*, 895 N.Y.S.2d 199, 201 (2d Dep't 2010)). The Friars Club has failed to do so.

The Friars Club gives two reasons for denying summary judgment. First, it argues that Kairos failed to accelerate the maturity date of the loans and that the loans did not mature until after the commencement of this lawsuit. Dkt. 99 at 13. Second, it says that Kairos has violated New York's one-action rule by seeking to foreclose on both the mortgage and the personal property. *Id.* at 11–12. Neither argument has merit.

#### A. Kairos properly accelerated the loans.

On March 30, 2023, Kairos's attorney sent the Friars Club a letter notifying it of defaults and accelerating the loan. Dkt. 90-38. The Friars Club responds that this letter reflected nothing more than an "intent to accelerate as a possible future event." Dkt. 99 at 16 (internal quotation marks and citation omitted). That reading is untenable. The letter says that "all of the Obligations under the Loan are *hereby* accelerated and immediately due and payable." Dkt. 90-38 at 2 (emphasis added). So the letter did not "merely discuss acceleration as a possible future event" but reflected a "clear and unequivocal election to accelerate." *Wells Fargo Bank, N.A. v. Breuer*, 165 N.Y.S.3d 119, 124 (2d Dep't 2022) (cleaned up).

Nor does it matter that the letter was sent by Kairos's attorney rather than Kairos itself. The Friars Association cites *Siegel v. Kentucky Fried Chicken of Long Island, Inc.*, 67 N.Y.2d 792, 793 (1986), to suggest that the sender makes a difference. But that case is distinct in two respects. First, in that case, the lease that was allegedly defaulted upon stated that notice of a default must be made

by the landlord, which was defined to mean "only the owner, or mortgagee in possession, for the time being." *Id.* Other lease provisions, by contrast, allowed actions to be taken by either the landlord or its agent. *Id.* The Friars Club does not identify any similar language here. And second, the Court held that the notice was "insufficient" because the notice of default was "signed not by the owner or the attorney named in the lease, but by another attorney with whom the tenant had never previously dealt." *Id.* at 794. Here, by contrast, the acceleration letter was sent by attorneys with whom the Friars Club had previously dealt. *Compare* Dkt. 90-38, *with* Dkt. 90-27.

### B. Kairos has not violated the one-action rule.

Finally, the Friars Club complains that Kairos has violated New York's one-action rule. That rule requires that a lender either foreclose in equity or sue at law on the note. It is not violated here. Kairos is not suing to foreclose in equity and at law. Rather, the loans list as collateral both real and personal property, and Kairos seeks to foreclose upon both. Dkt. 90-33 § 21(a)(iv)–(v), (c), (f). "[W]hen a security agreement covers both personal and real property," the secured party can "proceed against personal property … without prejudicing any of its rights with respect to the real property." *Nebari Nat. Res. Credit Fund I, LP v. Speyside Holdings LLC*, 161 N.Y.S.3d 756 (N.Y. Sup. Ct. 2022); *see Key Bank of New York v. Zahn*, 661 N.Y.S.2d 372, 373 (4th Dep't 1997) ("Also lacking in merit is defendants' contention that RPAPL 1301 precludes plaintiff's efforts to foreclose simultaneously on the two species of collateral."). The Friars Club has not identified any authority suggesting otherwise. So Kairos can foreclose on both the real and personal property.

## CONCLUSION

The claims against the New York state defendants are DISMISSED without prejudice. The Clerk of Court is directed to terminate the New York Department of Labor and the New York State Tax Department from this action.

Kairos's motion for summary judgment is GRANTED IN PART. It is GRANTED as to Kairos's claim against the Friars Club on the first and second counts of the complaint. It is DENIED without prejudice in all other respects.

Kairos should meet and confer with all other interested parties in this action and file a proposed judgment to resolve this case by December 22, 2023. Kairos may also file a letter,

no more than 5 single-spaced pages, in support of the proposed judgment. This opinion, the proposed judgment, and the letter should be served on all defaulting defendants by December 29, 2023. Any party objecting to the proposed judgment may submit a letter, no more than 5 single-spaced pages, explaining their reasons for objecting by January 8, 2024. Kairos may file a reply by January 12, 2024.

    The Clerk of Court is directed to terminate Dkt. 88.

SO ORDERED.

Dated: December 12, 2023
       New York, New York

                                    ARUN SUBRAMANIAN
                                    United States District Judge