# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KAIROS CREDIT STRATEGIES OPERATING PARTNERSHIP, LP,

    *Plaintiff*,

v.

THE FRIARS NATIONAL ASSOCIATION, INC.; *et al.*,

    *Defendants*.

Civil Action No. 1:23-cv-2960 (AS)

**[PROPOSED]**
**FINAL JUDGMENT OF FORECLOSURE AND SALE**

    **AN ORDER GRANTING JUDGMENT AS TO LIABILITY** having been previously entered by the Court in favor of Plaintiff Kairos Credit Strategies Operating Partnership, LP ("Plaintiff") with respect to Claims for Relief One and Two alleged in the Complaint: (a) pursuant to Fed. R. Civ. P. 56 against defendants The Friars National Association, Inc. ("Friars Club") and Hotel Restaurant & Club Employees and Bartenders Union Local 6 ("Union") and Club Employees Pension Fund ("Fund"); and (b) pursuant to Fed. R. Civ. P. 55(b)(1) against the remaining non-answering Defendants (collectively, the "Defaulted Defendants") (ECF Nos. 127, 144); and the Court having entered an Order (ECF No. 159) adopting the Report and Recommendation of Magistrate Judge Robyn F. Tarnofsky (the "Magistrate's Report") (ECF No. 151);

    **THIS MATTER** having been presented to the Court by motion (the "Motion") for the entry of final judgment (i) for foreclosure and sale in the sum of $17,148,630.65 as of June 10, 2024, as fixed by the Magistrate's Report; (ii) requesting the Clerk of Court to calculate an amount to be added to the amount set forth above to account for the interest that has accrued between the date of the Magistrate's Report and the date of the final judgment, to be calculated pursuant to

Conclusion 2 of the Magistrate's Report; (iii) assessing post-judgment interest to be calculated pursuant to Conclusion 3 of the Magistrate's Report; (iv) providing for the recovery of additional property protective advances and legal fees and costs in the foreclosure action incurred by Kairos subsequent to the period included in the Magistrate's Report; (v) exercising the Court's discretion pursuant to 28 U.S.C. §§ 2001 and 2004 to authorize the sale of certain real property (the "Mortgaged Premises") and personal property (the "Personalty," together with the Mortgaged Premises, the "Collateral") of the Receivership estate pursuant to the procedures set forth in the Declaration of Ian Lagowitz dated July 29, 2024 (the "Lagowitz Decl."), subject to the prior liens (if any) of the New York State Department of Labor and the New York State Department of Tax, but free and clear of any other liens, claims, interests and encumbrances with such liens, claims, interests, and encumbrances to attach to the sale proceeds; and (vi) for such other relief as the Court may deem appropriate.

Upon review of the Motion, the Magistrate's Report, the Memorandum of Law filed July 30, 2024, the Declaration of Mark S. Lichtenstein filed July 30, 2024, the Declaration of Jeffrey Tong filed July 30, 2024, the Declaration of Ian Lagowitz filed July 30, 2024, and all exhibits thereto, for good cause shown, it is hereby:

**ORDERED, ADJUDGED AND DECREED**, that the Motion is hereby granted in its entirety; and it is further

**ORDERED, ADJUDGED AND DECREED,** that a Final Judgment of Foreclosure and Sale, pursuant to FRCP 54, is hereby entered in favor of Kairos and against Friars Club; and it is further

**ORDERED, ADJUDGED AND DECREED**, that Plaintiff Kairos Credit Strategies Operating Partnership, LP shall recover from Friar's Club under Claims for Relief One and Two

alleged in the Complaint the sum of Seventeen Million, One Hundred Forty-Eight Thousand, Six Hundred Thirty Dollars, and Sixty-Five Cents (**$17,148,630.65**) as set forth and calculated in the Magistrate's Report; and it is further

**ORDERED, ADJUDGED AND DECREED**, that, pursuant to the Magistrate's Report, the Clerk of Court calculate an amount to be added to the $17,148,630.65 set forth above, which additional amount accounts for the interest that will have accrued on the unpaid principal balance and on six included Property Protective Advances between the date of the Magistrate's Report and the date of this Judgment, to be calculated by taking the product of the daily interest amount of $6,232.22 and the number of days between June 10, 2024 and the date of this Judgment; and it is further

**ORDERED, ADJUDGED AND DECREED,** that, pursuant to the Magistrate's Report, Plaintiff shall recover from Friars Club post-judgment interest running from the date this Judgment is entered until the judgment is satisfied, at a rate calculated based on the weekly average one-year constant maturity Treasury yield for the week preceding the date this Judgment is entered; and it is further

**ORDERED, ADJUDGED AND DECREED**, that the sum of Eight Hundred Six Thousand, Three Hundred and Eighty Dollars, and Ninety-Five Cents (**$806,380.95**) shall be added to the amounts set forth above, which additional amount accounts for the additional property protective advances incurred by Kairos subsequent to the period included in the Magistrate's Report; and it is further

**ORDERED, ADJUDGED AND DECREED**, that the sum of Fifty-Three Thousand, Five Hundred Thirty Two Dollars and Eighty Cents (**$53,532.80**) shall be added to the amounts set forth above, which additional amount accounts for the additional legal fees and costs in the foreclosure

3

77383328;5

action incurred by Kairos subsequent to the period included in the Magistrate's Report; and it is further

**ORDERED, ADJUDGED AND DECREED**, that, Plaintiff may foreclose on the Collateral to satisfy the money Judgment awarded above in whole or in part, and that the sale of the Collateral will be subject to the prior liens (if any) of the New York State Department of Labor and the New York State Department of Tax, but free and clear of any other liens, claims, interests, and encumbrances; and it is further

**ORDERED, ADJUDGED AND DECREED,** that the foreclosure sales procedures proposed by Plaintiff and the Receiver set forth below are approved:

1. The Receiver shall be permitted to market the assets for sale and determine, in his discretion, to sell the real property assets and intellectual property assets in bulk or in lot;

2. The Receiver shall be permitted to retain Northgate Real Estate Group ("Northgate") to act as special real estate advisor to facilitate the sale of the Collateral in accordance with the terms substantially set forth in the draft agreement annexed as Exhibit A to the Lagowitz Declaration;

3. During the term of Northgate's retention, Northgate shall have the exclusive right to sell, arrange financing or refinancing, recapitalization, joint venture, net lease or otherwise dispose of all or any of the Mortgaged Premises;

4. Upon entry of the order approving the sale procedures, the Receiver and Northgate shall have a period of up to forty-five (45) days, unless extended by a Court order, to market the Collateral;

5. In consultation with Plaintiff, the Receiver and Northgate shall determine whether a greater sale price will be generated by a private sale, or by an auction sale subject to higher and better offers, and Receiver and Northgate shall have the discretion to choose the method that will result in the greatest benefit for all stakeholders;

6. In the event that the Receiver and Northgate, in their discretion, schedule an auction sale subject to higher and better offers, they may, in their discretion, establish "market" bid protections for potential stalking horse bidders such as a reasonable "break-up" fee and expense reimbursement to the extent that a third-party bidder outbids a stalking horse bidder for title to the assets;

7. The Mortgaged Premises shall be sold in "as is" condition, defined as the condition the premises are in as of the date of sale and continuing through the date of closing, and that said sale shall be subject to:

- any state of facts that an inspection of the Mortgaged Premises would disclose;

- any state of facts that an accurate survey of the Mortgaged Premises would disclose;

- sums, if any, of real estate taxes, and assessments, water, sewer, and vault charges, with interest and penalties, including lien and certificate sales for delinquent items, unless paid from the proceeds of the foreclosure sale;

- covenants, reservations, restrictions, declarations, easements, rights of way and public utility agreements of record, if any;

- if any, any building and zoning ordinances of the municipality in which the Mortgaged Premises is located and possible violations of same;

- any rights of tenants or persons in possession of the Mortgaged Premises other than tenants, or any portion thereof;

- any violations of record;

- prior lien(s) of record to the mortgage being foreclosed, if any, except those liens addressed in RPAPL § 1354;

- any equity of redemption of the United States of America to redeem the Mortgaged Premises within one hundred and twenty days (120) days from date of sale;

8. In accordance with RPAPL §1353(1), the Plaintiff to this action may become the purchaser at such sale pursuant to its right to credit bid, and the Receiver at the time of sale may accept a written bid from the Plaintiff or the Plaintiff's attorneys, just as though the Plaintiff were physically present to submit said bid;

9. The terms of sale, to the extent they do not contradict this judgment or violate any law, shall be binding in all respects on the purchaser;

10. In the event that the Receiver opts to sell the Collateral via a public sale, in accordance with 28 U.S.C. § 2001(a), the Collateral shall be sold either together or separately depending on which method of sale with result in the greatest sale proceeds, at a public auction at Daniel Patrick Moynihan United States Courthouse located at 500 Pearl Street, New York, New York, or at the Mortgaged Premises, or at any other place directed by the Court, by and under the direction of the

5

77383328;5

Receiver. The Receiver shall give public notice of the time and place of sale in accordance with RPAPL § 231. The Receiver shall accept the highest bid offered by a bidder who will be identified upon the court record, and shall require that the successful bidder immediately execute terms of sale for the purchase of the Collateral, and pay by certified or bank check ten percent (10%) of the sum bid, unless the successful bidder is Plaintiff in which case no deposit against the purchase price shall be required. In the event the first successful bidder fails to execute terms of sale or pay the ten percent (10%) deposit as required immediately following the bidding, the Collateral shall be reoffered at auction;

11. In the event that the Receiver opts to sell the Collateral in a private sale, in accordance with 28 U.S.C. § 2001(b), Receiver shall apply to the Court to appoint three disinterested persons to appraise the Mortgaged Premises; it shall only accept a sale price at least two-thirds of the appraised value; it shall publish in the newspaper the terms of the sale at least ten days before confirmation; and it shall accept any bona fide offer exceeding a 10 percent increase over the bid obtained in a private sale;

12. Transfer tax is not a lien upon the Mortgaged Premises or an expense of sale, but rather an expense of recording the deed. All expenses of recording the deed shall be paid by the purchaser and not the Receiver from sale proceeds. Purchaser shall be responsible for interest accruing on real property taxes after the date of the foreclosure sale;

13. The Receiver shall make a report of sale in accordance with RPAPL §1355(1), showing the disposition of the sale proceeds accompanied by the receipts for payments made and file it with the Clerk of the Court within thirty (30) days of completing the sale;

14. The Mortgaged Premises shall be sold by the Receiver in accordance with RPAPL §1351(1); the date of the judgment is deemed the date it is entered; and if the Receiver cannot conduct the sale within 90 days of the date of the judgment, in accordance with Fed. R. Civ. P. §6(b), the time fixed by RPAPL §1351(1) is extended for the Receiver to conduct the sale as soon as reasonably practicable;

15. The closing of title shall take place at the office of the Receiver or at such location as the Receiver shall determine within thirty (30) days after such sale unless otherwise stipulated by all parties. The Receiver shall transfer title only to the successful bidder at the auction, except if Plaintiff is the successful bidder, in which case Plaintiff may assign its bid and title may be transferred to its assignees. Any delay or adjournment of the closing beyond thirty (30) days may be stipulated among the parties, with the Receiver's consent, up to seventy-five (75) days from the date of sale, but any adjournment beyond seventy-five (75) days may be set only with the approval of this Court;

16. The purchaser or purchasers at such sale shall be let into possession of the Mortgaged Premises on production or delivery of the Receiver's deed or deeds.

**ORDERED, ADJUDGED AND DECREED,** that Plaintiff may, after entry of this judgment, make all necessary advances for inspections and maintenance of the Mortgaged Premises, taxes, insurance premiums or other advances necessary to preserve the Mortgaged Premises, whether or not said advances were made prior to or after entry of judgment, so long as said advances are not included in the amount due Plaintiff awarded herein, and that the Receiver be provided with receipts for said expenditures, which amounts together with interest thereon at the Note rate from the date of the expense until the date of entry of this Judgment, then with interest at the Judgment rate until the date of transfer of the deed shall be included in the amount due Plaintiff; and it is further

**ORDERED, ADJUDGED AND DECREED**, that each and all of the defendants in this action and all persons claiming under them, or any or either of them, after the filing of such notice of pendency of this action, are forever barred and foreclosed of all right, claim, lien, title, interest and equity of redemption in the said Collateral and each of every part thereof; and it is further

**ORDERED, ADJUDGED AND DECREED**, that Plaintiff and/or the Receiver shall file a motion for the approval of the sale of any Collateral in accordance with the sale procedures outlined in the immediately preceding paragraphs and in accordance with the provisions of 28 U.S.C. §§ 2001 *et seq.*; and it is further

**ORDERED, ADJUDGED AND DECREED**, that Plaintiff shall serve a copy of this Judgment upon the owner of equity of redemption, any person having an interest in the subject property, and any other party entitled to notice no less than __ days prior to sale.

**SO ORDERED** this _____ day of _____, 2024.

                                                                                                                              _____
                                                                                                                              **ARUN SUBRAMANIAN**
                                                                                                                              **UNITED STATES DISTRICT JUDGE**