UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KAIROS CREDIT STRATEGIES OPERATING PARTNERSHIP, LP,<br><br>    *Plaintiff*,<br><br>v.<br><br>THE FRIARS NATIONAL ASSOCIATION, INC.; CITY OF NEW YORK DEPARTMENT OF ENVIRONMENTAL CONTROL; NEW YORK CITY FINANCE ADMINISTRATION BUREAU OF COMPLIANCE AND COLLECTION; HOTEL RESTAURANT & CLUB EMPLOYEES AND BARTENDERS UNION LOCAL 6 AND CLUB EMPLOYEES PENSION FUND; NEW YORK DESIGN ARCHITECTS, L.L.P.; and "JOHN DOE #1" through "JOHN DOE #20," the twenty names being fictitious and unknown to the Plaintiffs, the person or parties intended being the tenants, occupants, persons or corporations, if any, having or claiming an interest in lien upon the premises,<br><br>    Defendants. | Civil Action No. 1:23-cv-2960 (AS) |

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO ENTER FINAL JUDGMENT OF FORECLOSURE AND SALE

                                                                                  **AKERMAN LLP**
                                                                                 Mark S. Lichtenstein, Esq.
                                                                                 1251 Avenue of the Americas, 37th Floor
                                                                                 New York, NY 10020
                                                                                  Tel. (212) 880-3800
                                                                                  Mark.lichtenstein@akerman.com
                                                                                  *Attorneys for Plaintiff,*
                                                                                  *Kairos Credit Strategies Operating*
                                                                                   *Partnership, LP*

Plaintiff, Kairos Credit Strategies Operating Partnership, LP ("Kairos" or "Plaintiff"), respectfully submits this memorandum of law in support of its motion for the entry of final judgment: (i) for foreclosure and sale in the sum of $17,148,630.65 as of June 10, 2024, as fixed by the Report and Recommendation of Magistrate Judge Robyn F. Tarnofsky (the "Magistrate's Report"); (ii) requesting the Clerk of Court to calculate an amount to be added to the amount set forth above to account for the interest that has accrued between the date of the Magistrate's Report and the date of the final judgment, to be calculated pursuant to Conclusion 2 of the Magistrate's Report; (iii) assessing post-judgment interest to be calculated pursuant to Conclusion 3 of the Magistrate's Report; (iv) providing for the recovery of additional property protective advances and legal fees and costs in the foreclosure action incurred by Kairos subsequent to the period included in the Magistrate's Report; (v) exercising the Court's discretion pursuant to 28 U.S.C. §§ 2001 and 2004 to authorize the sale of certain real property (the "Mortgaged Premises") and personal property (the "Personalty," together with the Mortgaged Premises, the "Collateral") of the Receivership estate pursuant to the procedures set forth in the Declaration of Ian Lagowitz dated July 29, 2024 (the "Lagowitz Decl."), subject to the prior liens (if any) of the New York State Department of Labor and the New York State Department of Tax, but free and clear of any other liens, claims, interests and encumbrances with such liens, claims, interests, and encumbrances to attach to the sale proceeds; and (vi) for such other relief as the Court may deem appropriate.

## PROCEDURAL AND FACTUAL BACKGROUND

On August 28, 2018, Friars Club received a $2 million loan from 57 East 55th Street Funding Associates ("Funding Associates"), and as security, Friars Club granted Funding Associates an interest in certain real and personal property located at 57 East 55th Street (collectively, "the Collateral"). *See* Mem. Op. & Order, at 1 (ECF No. 119) ("Summ. J. Order");

Decl. of Raymond Hu in Supp. of Pl.'s Summ. J. Mot. ("Hu SJ Decl.") (ECF No. 90) Ex. 4. From 2018 to 2019, Friars Club received four additional loans totaling $4 million from Funding Associates, all of which were secured by the Collateral. *See* Summ. J. Order 1; Hu SJ Decl. Exs. 5-12. In February 2020, Funding Associates assigned the loans to Titan Capital ID, LLC ("Titan"), which provided an additional $3 million loan secured by the Collateral. *See* Hu SJ Decl. Exs. 13, 24.

On June 25, 2021, Titan assigned the $9 million loan to Kairos, which provided Friars Club with an additional $4 million loan secured by the Collateral, for a total principal amount of $13 million. *See* Summ. J. Order, at 1; Hu SJ Decl. Exs. 28, 31, 32.

Beginning on March 1, 2023, Friars Club failed to make a payment to Kairos. *See* Summ. J. Order, at 2; Hu SJ Decl. ¶ 57. Two weeks later, Kairos sent Friars Club a notice of default demanding that Friars Club cure, but the notice was returned as unclaimed. *See* Summ. J. Order, at 2; Hu SJ Decl. ¶ 57 & Ex. 36. On March 30, 2023, Kairos's counsel sent a letter to Friars Club notifying that "all of the Obligations under the Loan are hereby accelerated and immediately due and payable as a result of certain Events of Default, which are continuing." Hu SJ Decl. Ex. 37. Friars Club failed to cure its default. *See id.* ¶ 58.

On April 7, 2023, Plaintiff commenced this action against Friars Club, seeking to foreclose on the Collateral. *See* Compl. (ECF No. 1). Plaintiff included as defendants various entities that might have claims on the Property, including: City of New York Department of Environmental Control ("NYSDEC"), New York State Department of Labor ("NYSDOL"), New York State Tax Department ("NYSTD"), and New York City Finance Administration Bureau of Compliance and Collection ("NYCFAB") (collectively, the "New York Defendants"), the Hotel, Restaurant & Club

Employees and Bartenders Union, Local 6 ("Union") and Club Employees Pension Fund ("Fund"). *See id.*

On May 26, 2023, the Court, on Kairos's motion, appointed Trigild IVL Group, LLC, by and through its principal, Ian Lagowitz (the "Receiver"), as a receiver to hold, safeguard and preserve the Collateral securing the loan agreement and related loan documents held by Kairos. Order Appointing Receiver (ECF No. 67).

On October 18, 2023, Kairos moved for summary judgment. See Mot. for Summ. J. (ECF No. 88). In an Opinion and Order dated December 12, 2023 (the "Order") (ECF No. 119), the Court held, among other things, that Plaintiff was entitled to an order of foreclosure and sale since there was no issue of material fact that: (1) Plaintiff was the holder or assignee of $13 million in notes and the mortgages on Friars Club's Collateral that secured those notes; and (2) Friars Club defaulted on its loans. *See generally* Order. The Court memorialized its Order in a Judgment dated January 31, 2024 (the "Original Judgment") (ECF No. 127), which was later amended on May 29, 2024 (the "Amended Judgment") (ECF No. 144).[1]

Pursuant to the Original and Amended Judgment, summary judgment was entered against defendants Friars Club and Hotel Restaurant & Club Employees and Bartenders Union Local 6 ("Union") and Club Employees' Pension Fund ("Fund") on the first and second counts of the Complaint. Am. J., at 2. These two counts were, respectively, Foreclosure of Mortgage and Foreclosure of Security Interest in Personal Property. Compl. ¶¶ 74-97 (ECF No. 1). In addition, default judgment was entered against non-answering Defendants City of New York Department of Environmental Control ("NYSDEC") and New York City Finance Administration Bureau of Compliance and Collection ("NYCFAB"). Two additional Defendants, New York State

---

[1] Plaintiff was required to seek the entry of the Amended Judgment due to an inadvertent omission of language in the Original Judgment entering summary judgment against Friars Club.

Department of Labor ("NYSDOL") and New York State Tax Department ("NYSTD"), were dismissed. Am. J. at 3.

Judge Subramanian referred the calculation of the amount due to Plaintiff under the Loan Documents to Magistrate Judge Robin Tarnofsky, who was to submit to the Court and file a report and recommendation. Am. J. at 3. Following submissions from Plaintiff, Friars Club, the Union and the Fund, the Magistrate Judge filed a Report and Recommendation on June 10, 2024 (the "Magistrate's Report") (ECF. No 151).

The Magistrate Judge concluded that Kairos was owed $17,148,630.65, comprised of the unpaid principal balance, certain property protective advances, attorneys' fees and costs relating to the foreclosure action, and accumulated interest on the unpaid principal balance. *See id.*, at 29-30 (concl. 1). The Magistrate Judge also concluded that Plaintiff was entitled to additional prejudgment and post-judgment interest. *See id.* at 30 (concls. 2 & 3).

The Magistrate Judge permitted each party an additional fourteen days to file any written objections. *See id.* at 31. The Court later extended this deadline for objections to July 8, 2024 upon the Friars Club's letter motion. Order (ECF No. 155). No party filed written objections to the Magistrate Report by the July 8 deadline.

On July 29, 2024, the Court adopted the Magistrate's Report in its entirety and ordered Plaintiff to submit a proposed final judgment of foreclosure and sale. Order Adopting Report & Recommendations (the "R&R Order") (ECF No. 159).

## **ARGUMENT**

Pursuant to the Court's instructions in the R&R Order, Plaintiff moves for the entry of a final judgment of foreclosure and sale. For the reasons set forth below, Plaintiff respectfully requests that the final judgment include additional protective advances and legal fees incurred

subsequent to the final submission to the Magistrate Judge. Moreover, the sale procedures set forth by the Receiver in the accompanying Lagowitz Declaration will maximize the value of the Collateral for the benefit of all parties and therefore should be approved by the Court pursuant to 28 U.S.C. §§ 2001 and 2004.

I. **FINAL JUDGMENT SHOULD BE ENTERED IN PLAINTIFF'S FAVOR AND SHOULD INCLUDE THE AMOUNTS CALCULATED BY THE MAGISTRATE JUDGE**

Pursuant to the conclusions of the Magistrate's Report, which were adopted by this Court (*see* R&R Order, at 2), the final judgment of foreclosure should be entered in Kairos's favor in the amount of $17,148,630.65, plus pre-judgment interest to be calculated by the Clerk of Court pursuant to the formula set forth by the Magistrate Judge. *See* Magistrate's Report, at 29-30, Concls. 1 & 2. In addition, per the Magistrate Judge, Kairos is entitled to post-judgment interest at a rate calculated based on the weekly average one-year constant maturity Treasury yield for the week preceding the date this Judgment is entered. *See id.* Concl. 3.

II. **KAIROS IS ENTITLED TO PROPERTY PROTECTIVE ADVANCES AND LEGAL FEES AND COSTS INCURRED SUBSEQUENT TO THE FILING DATE OF THE MAGISTRATE'S REPORT**

As recognized by the Court, *see* Am. J., Plaintiff has established the required elements for a foreclosure. It therefore requests that the Collateral be sold and that the sale proceeds be distributed in accordance with RPAPL § 1354. Plaintiff is entitled to have the final judgment of foreclosure and sale include reimbursement for all costs, allowances, and disbursements made in this matter in accordance with the terms of the Loan Documents and CPLR Article 83.

In determining the amount of the costs, allowances and disbursements that should be awarded Kairos from the proceeds of an anticipated sale by the Receiver, Magistrate Judge Tarnofsky concluded that Kairos is entitled to, among other things, reimbursement of all property

protective advances and all reasonable legal fees and costs incurred in connection with this foreclosure action. *See* Magistrate's Report, at 29-30.

Since the Magistrate's Report was necessarily limited to those protective advances and legal fees and costs included in Plaintiff's February 2024 submissions, the final order of foreclosure and sale must include additional provision for subsequent reimbursable costs incurred by Plaintiff.

A.  **Property Protective Advances**

The Magistrate Judge has already determined that Kairos is entitled to recover any property protective advances it incurred. *See* Magistrate's Report, at 10-11 (ECF No. 151) ("Courts in this Circuit have allowed plaintiffs in foreclosure actions to recover property protective advances when the plaintiffs submit sufficient documentation to prove the accuracy of the claimed cost of such advances.") (citing *E. Sav. Bank, FSB*, 2022 WL 18858919, at *5 (E.D.N.Y. Dec. 27, 2022)). These advances consist of (i) insurance, taxes, property inspections, and receiver fees; and (ii) servicing fees. *See* Magistrate's Report, at 10-16.

The Magistrate's Report was limited to property protective advances incurred through the period ending February 23, 2024. *See id.* 10 n.5. But the Magistrate Judge's analysis and CPLR Article 83 applies equally to all protective advances expended through the sale of the Collateral.

As set forth in the Declaration of Jeffrey Tong ("Tong Decl."), currently filed with this Motion, Kairos has incurred an additional **$806,380.95** in property protective advances, which should be included in the final judgment of foreclosure and sale. Tong Decl. ¶ 22.

B.  **Legal Fees**

The Magistrate Judge has also determined that Kairos is entitled to reasonable legal fees and costs incurred in connection with this foreclosure action. *See* Magistrate's Report, at 16-21

7
77366252;5

("Various provisions of the loan documents make clear that Plaintiff is entitled to reasonable attorney's fees and costs for enforcing its rights.").[2]

The Magistrate's Report was limited to consideration of legal fees and costs incurred through February 9, 2024. See *id.*, at 16. As above, however, the Magistrate Judge's analysis and CPLR Article 83 apply equally to legal fees and costs incurred in connection with this foreclosure action expended through the date of final judgment. In fact, the declaration submitted to the Magistrate Judge expressly reserved the right to seek inclusion of legal fees incurred after Plaintiff's submission to the Magistrate Judge in the total indebtedness under the Loan Documents, subject to Court approval and notice to the defendants. *See* Decl. of Mark S. Lichtenstein in Supp. of Attorneys' Fees, Costs & Expenses ¶ 10 n.1 (ECF. No. 132).

As set forth in the Declaration of Mark S. Lichtenstein ("Lichtenstein Decl."), filed concurrently with this Motion, Kairos incurred an additional $53,427.50 in reasonable legal fees and $105.30 in costs, which should be included in the final judgment. Lichtenstein Decl. ¶ 23.

### III. THE SALE PROCEDURES PROPOSED BY THE RECEIVER ARE APPROPRIATE UNDER 28 U.S.C. §§ 2001 AND 2004

In a judicial sale, the Court is the vendor, and the sale is by the Court even though made through a receiver. The sale, in such a case as this, "confers no right to the property sold until it has been confirmed by the court." *In re Haywood Wagon Co.*, 219 F. 655, 659 (2d Cir. 1914). In the Motion, Kairos respectfully asks the Court to approve the procedures set forth in the Lagowitz Declaration for the sale of the Mortgaged Premises and Personalty. Because Court approval of a sale is mandatory, Plaintiff will seek approval of the sale of the Collateral arranged by the Receiver prior to a closing.

---

[2] The Magistrate Judge denied recovery of legal fees and costs incurred in connection with draft loan modification documents. *See* Magistrate's Report, at 15-16.

77366252;5

## A. Sale of the Mortgaged Premises

Title 28 U.S.C. §2001 provides the procedures for the sale of real property by a receiver. Subsection (a) sets forth the procedures for the public sale of real property at the courthouse, and subsection (b) concerns the sale of real property at private sale and provides a detailed set of procedures prior to confirmation of the sale. The procedures set forth in 28 U.S.C. § 2001(b) permit the court to order the sale of real property via private sale "upon such terms and conditions as the court approves, if it finds that the best interests of the estate will be conserved thereby." 28 U.S.C. § 2001(b).

For the reasons set forth in the Declaration of Ian Lagowitz ("Lagowitz Decl."), filed concurrently with this Motion, the terms and conditions under which the Receiver will sell the Mortgaged Premises are plainly in the best interests of the estate. For example:

- The Receiver himself has been involved in nearly one thousand receivership, fiduciary and trustee appointments over his 25-year career and has the expertise to sell the Mortgaged Premises at a price that is in the best interests of the estate (Lagowitz Decl. ¶ 8);

- The Receiver will hire Northgate Real Estate Group ("Northgate Real Estate Group") to conduct the marketing process. Northgate is a multi-disciplinary commercial workout advisory and brokerage firm with a specialization in foreclosure sales. It has been involved in the sale of over $3 billion of investment properties spanning all major asset classes, including multi-family apartment buildings, development sites, factory/warehouses, transitional housing facilities, bulk condominium packages, industrial, retail, hotel, office, mixed-use, and commercial buildings (Lagowitz Decl. ¶ 12);

- Northgate's expertise and its ability to reach wide segments of the market through its website, marketing list and other marketing tools will provide the highest sales price for the

benefit of all stakeholders. Moreover, the retention agreement with Northgate will provide that, in the event the highest bidder is not an entity discovered by Northgate—either because the bidder is Plaintiff itself, or because Plaintiff or Receiver had begun negotiations with another party before hiring Northgate—Northgate will only receive a nominal commission (Lagowitz Decl. ¶ 16);

- The receiver will have the option of selling the Collateral in bulk or in lot, having the flexibility to proceed with whichever method will yield the highest sale price (Lagowitz Decl. ¶ 11);

- The receiver will have the option to conduct a private sale or a public sale, depending upon which method will yield the highest sale price (Lagowitz Decl. ¶ 19).

If the Receiver does, in fact, proceed with a private sale, it will comply with the other terms of 28 U.S.C. § 2001 prior to the Court's confirmation of the sale. Specifically, it will apply to the Court to appoint three disinterested persons to appraise the Mortgaged Premises; it will only accept a sale price at least two-thirds of the appraised value; it will publish in the newspaper the terms of the sale at least ten days before confirmation; and it will accept any bona fide offer exceeding a 10 percent increase over the bid obtained in a private sale. *See* 28 U.S.C. § 2001(b); Lagwitz Decl. ¶ 25.

**B.** **Sale of the Personalty**

Title 28 U.S.C. §2004 pertains to the sale of personal property and provides that: "[a]ny personal property sold under order or decree of any court of the United States shall be sold in accordance with section 2001 of this title, **unless the court orders otherwise**." 28 U.S.C. §2004 (emphasis added). Thus, unlike the sale of real property, the procedures for the sale of personal property may be modified by the Court, and those approved procedures will be only reviewed under an abuse of discretion standard**.** *Tanzer v. Huffines*, 412 F.2d 221, 222 (3d Cir. 1969)

(upholding an expedited sales procedure approved by the District Court because of the deteriorating financial condition of the corporation and the deadline fixed by the offeror); *Glander International Bunkering Inc. v. M/V TERESA*, 586 F. Supp. 3d 189, 198 (S.D.N.Y. 2022); *United States v. Scherer*, 532 F. Supp. 3d 485, 489-90 (S.D. Ohio 2021).

District courts have "extremely broad discretion in supervising an equity receivership and in determining the appropriate procedures to be used in its administration." *F.D.I.C. v. Bernstein*, 786 F. Supp. 170, 177 (E.D.N.Y. 1992). "In determining whether to approve a sale of personal property, courts generally consider whether the proposed transaction is 'consistent with the best interests of the receivership.'" *Sec. & Exch. Comm'n v. Amerindo Inv. Advisors Inc.*, 2016 WL 10826483, at *1 (S.D.N.Y. Apr. 26, 2016).

In this case, authorization and approval of the sale procedures set forth in the Lagowitz Declaration is entirely appropriate. As noted above, Mr. Lagowitz has more than 25 years of experience in the industry, handling nearly one thousand receivership, fiduciary and trustee appointments. He is well qualified to obtain the best price for the Personalty, which is plainly consistent with the best interests of the receivership.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that its Motion to Enter Final Judgment of Foreclosure and Sale be granted.

Dated: New York, New York
      August 1, 2024

**AKERMAN LLP**

By: */s/Mark S. Lichtenstein*
    Mark S. Lichtenstein, Esq.
    1251 Avenue of the Americas, 37th Floor
    New York, NY 10020
    Tel. No.: (212) 880-3800
    E-mail: mark.lichtenstein@akerman.com

*Attorneys for Plaintiff Kairos Credit Strategies Operating Partnership, LP*