UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KAIROS CREDIT STRATEGIES OPERATING PARTNERSHIP, LP,<br><br>*Plaintiff,*<br><br>v.<br><br>THE FRIARS NATIONAL ASSOCIATION, INC.; CITY OF NEW YORK DEPARTMENT OF ENVIRONMENTAL CONTROL; COMMISSIONER OF LABOR STATE OF NEW YORK DEPARTMENT OF LABOR; NEW YORK STATE TAX DEPARTMENT LEGAL DEPARTMENT; NEW YORK CITY FINANCE ADMINISTRATION BUREAU OF COMPLIANCE AND COLLECTION; HOTEL RESTAURANT & CLUB EMPLOYEES AND BARTENDERS UNION LOCAL 6 AND CLUB EMPLOYEES PENSION FUND; AND "JOHN DOE #1" THROUGH "JOHN DOE #20," the twenty names being fictitious and unknown to the Plaintiffs, the person or parties intended being the tenants, occupants, persons or corporations, if any, having or claiming an interest in lien upon the premises,<br><br>*Defendants.* | Case No. 1:23-cv-2960 (AS) (RFT) |

RESPONSE OF DEFENDANTS HOTEL, RESTAURANT & CLUB
EMPLOYEES AND BARTENDERS UNION LOCAL 6 and the
CLUB EMPLOYEES PENSION FUND TO PLAINTIFF'S MOTION
TO ENTER FINAL JUDGMENT OF FORECLOSURE AND SALE

Pursuant to the Court's August 6, 2024 Order [ECF No. 168], and this Court's summary judgment order dated January 31, 2024 ("SJ Order") [ECF No. 127], Defendants HOTEL, RESTAURANT & CLUB EMPLOYEES AND BARTENDERS UNION LOCAL 6 ("Union") and the CLUB EMPLOYEES PENSION FUND (the "Fund") respectfully submit this Response to Plaintiff's Motion to Enter Final Judgment of Foreclosure and Sale ("Union/Fund Response") in joint limited response to the Motion of Plaintiff Kairos Credit Strategies Operating Partnership, L.P. ("Plaintiff" or "Kairos"). See, ECF No. 160 (hereinafter the "Motion").

The Union and the Fund submit their Response to preserve the rights of the former

employees of the Friars Club to unpaid severance and health care and retirement benefit contributions upon which those employees rely, as contemplated in the prior SJ Order of this Court. The Union and the Fund do not otherwise oppose Plaintiff's calculations of monetary damages against the Friars Club.

## FACTS

1. The Union represents over 30 non-managerial employees of the Defendant Friars National Association, Inc. (the "Club") under a collective bargaining agreement containing a broad successor clause (the "CBA") and the National Labor Relations Act. Declaration of Alyssa Tramposch (Tramposch Decl.) ECF No. 55, ¶ 2 and 4, Exhibits A and B.

2. The Fund is an employee benefit plan providing retirement and other benefits to industry employees, including the Friars' employees, in conformity with the Taft Hartley Act, 29 U.S.C. § 185 and the Employee Retirement Income Security Act of 1974 ("ERISA").

3. On February 27, 2023, the Union obtained a Judgment in Case No. 22-654668/2022 (the "Judgment") in the amount of $148,588.95 plus statutory interest, totaling $153,430.64 on its own behalf and for amounts due the Fund. Tramposch Decl. ECF No. 55, ¶ 7, and Ex. C.

4. The Union and the Fund filed their respective claims for amounts due each from Friars on behalf of Friar's former employees, who are represented by the Union, and who are participants in the Pension Fund. ECF No. 64, ¶¶ 30–37.

5. On April 7, 2023, Plaintiff filed a Complaint commencing the above-captioned foreclosure action [ECF No. 1] with respect to certain real and personal property owned by the Club. On October 18, 2023, Plaintiff filed a motion for summary judgment of foreclosure (the "Summary Judgment Motion"). ECF Nos. 88-93.

6. On January 31, 2024, the Court entered summary judgment of foreclosure against various Defendants, including the Defendant Friars Club, and also entered default judgments

against certain other Defendants. See SJ Order [ECF No. 127].

7. Paragraph 1 of the SJ Order states:

> Kairos is awarded summary judgment, pursuant to Fed. R. Civ. P. 56, against defendants Hotel Restaurant & Club Employees and Bartenders Union Local 6 ("Union") and Club Employees Pension Fund ("Fund") on the first and second counts of the complaint; provided that: (a) the Union and Fund shall retain their right to assert their proper priority to recover amounts due to them on their judgment lien against the Friars Club from the surplus proceeds, if any, from a sale of the Friars Club's property after payment of all amounts the Court shall determine are properly payable to Kairos, (b) the Union shall retain its rights, if any, under applicable law and the Collective Bargaining Agreement between the Union and the Friars Club, and (c) the Fund shall retain its rights against the Friars Club, if any, with respect to the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA") from a sale of the Friars Club property after payment of all amounts the Court shall determine are properly payable to Kairos.

8. The Union and the Fund have at all times preserved their respective rights under Paragraph 1 of the SJ Order. *See, e.g.*, Reply Proposed Findings of Fact and Conclusions of Law, ECF No. 133.

## ARGUMENT

9. The Union and the Fund do not oppose Plaintiff's Motion, provided the Union and Fund receive priority for the surplus proceeds at a sale of the Property (as defined in Plaintiff's Motion), if any, and maintain all rights under the CBA with the Club and under common law and statute upon the transfer of the Property to any third-party or future owner.

10. Other than Kairos and the Club itself, the Union and the Fund remain the only parties defending their interests, the unsatisfied Judgment, in the Property. The other Defendants have defaulted. ECF Nos. 84-87; 127, ¶ 2. Accordingly, to the extent there is any surplus from the sale of the Property, the Union and Pension Fund should have priority to that money until their claims are satisfied in full, with post judgment interest to date.

11. The Union and Fund believe that Kairos does not oppose the above. *See* ECF No. 89, p. 10. The SJ Order does not adversely affect the Third and Fourth cross claims of the Union

3

4887-7498-6456, v. 1

and the Fund. ECF No. 64, ¶¶ 30-37. The disposition of those claims can be determined post the pending motion and any sale of the Property.

12. The Judgment money described in paragraph (3) above is needed to pay contributions for health and retirement coverage on behalf of the Club's former employees and is specifically referenced as a priority claim in Paragraph 1(a) to the SJ Order.

13. Similarly, the CBA terms remain binding. *666 Drug, Inc. v. Tr. of 1199 SEIU Health Care Emps. Pension Fund*, 571 Fed. Appx. 51, 52-53 (2d Cir. 2014) (*citing Laborers Health & Welfare Trust Fund for N. Cal. v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 544-46 (1988)). Since the CBA terms remain binding, this Court should hold that the current status of the Union and Fund's rights remains "as is" under the CBA, common-law and statute. *Laborers Health & Welfare Trust Fund for N. Cal.*, 485 U.S. at 544-46.

14. As a result of the SJ Order authorizing the sale, it is now clear that the Club's former employees may not be recalled to work. Accordingly, in addition to the Judgment money, severance payments are due to these employees under the CBA to cushion their layoffs for themselves and their families. *N.Y. Hotel & Motel Trades Council v. Stanford N.Y.*, No. 21 Civ. 2012 (PAE), 2021 BL 172328, *4-5 (S.D.N.Y. May 10, 2021); *N.Y. Hotel & Motel Trades Council v. CF 43 Hotel, LLC*, No. 16 Civ. 5997 (RMB); 2017 WL 2984168 (S.D.N.Y. June 14, 2017). The Union calculates these payments as $378,826.20 for the employees and $94,706.55 as contributions for health care coverage. These amounts come within Paragraph 1(b) of the SJ Order. Undersigned counsel certifies under penalty of perjury that a true and accurate copy of the Union's calculations based on Union records is attached as Exhibit A.

15. As a result of the SJ Order authorizing the sale, it is now likely that the Club has permanently ceased operations and its obligation to contribute to the Fund. Accordingly, in addition to the Judgment money, withdrawal liability under the Multiemployer Pension Plan

4

4887-7498-6456, v. 1

Amendments Act of 1980 ("MPPAA") is due to the Fund. *Concrete Pipe & Products of California, Inc. v. Constr. Laborers Pension Trust for Southern California*, 508 U.S. 602, 609-10 (1993); *666 Drug, Inc. v. Tr. of 1199 SEIU Health Care Emps. Pension Fund*, 571 Fed. Appx. at 53. The Fund estimates the Club's withdrawal liability to be $526,316. This amount comes within Paragraph 1(c) of the SJ Order. Undersigned counsel certifies under penalty of perjury that a true and accurate copy of the Fund actuary's calculations is attached as Exhibit B.

Wherefore, based on the above, any order on this Motion should not disturb the Union or the Fund's rights detailed above, and should include notice to the Union and Fund of the sale date, time and related proceedings.

Respectfully submitted,

/s/
Barry N. Saltzman
(bsaltzman@pittalaw.com)
Trevor Hanrahan
(thanrahan@pittlaw.com)
120 Broadway; 28th Floor
New York, NY 10271
Telephone: 212-652-3890
Facsimile: 212-652-3891
*Attorneys for the Union and the Fund*

Dated: New York, New York
August 15, 2024

# EXHIBIT A

| Full Name | Date of Hire | Classification | Wage Rate | Benefit Day Wage Rate | Years of Service | 4 Days Severance @ 8 hr/day | Funds Contributions on Severance | Total |
|---|---|---|---|---|---|---|---|---|
| Francisco, Christian | 8/23/2013 | Club Attendant | $ 22.36 | $ 22.36 | 10.5 | $ 7,512.96 | $ 1,878.24 | $ 9,391.20 |
| Mack, Willie | 3/3/2021 | Club Bartender* | $ 17.00 | $ 34.00 | 3 | $ 1,632.00 | $ 408.00 | $ 2,040.00 |
| Velez, Lina | 9/4/2018 | Club Bartender* | $ 17.52 | $ 35.04 | 5.5 | $ 3,083.52 | $ 770.88 | $ 3,854.40 |
| Ariane, Vidal** | 9/29/2015 | Club Bartender* | $ 17.52 | $ 35.04 | 8.5 | $ 4,765.44 | $ 1,191.36 | $ 5,956.80 |
| Olcese, Eduardo | 2/1/2000 | Club Busperson* | $ 13.23 | $ 26.46 | 24 | $ 10,160.64 | $ 2,540.16 | $ 12,700.80 |
| Cruz, Miguel | 9/21/1999 | Club Busperson* | $ 13.23 | $ 26.46 | 24.5 | $ 10,372.32 | $ 2,593.08 | $ 12,965.40 |
| Simon, Arturo | 8/22/1994 | Club Busperson* | $ 13.00 | $ 26.00 | 29.5 | $ 12,272.00 | $ 3,068.00 | $ 15,340.00 |
| Narvaez, Fausto | 8/1/1991 | Club Busperson* | $ 13.00 | $ 26.00 | 32.5 | $ 13,520.00 | $ 3,380.00 | $ 16,900.00 |
| Alvarez, Ruben | 8/1/1991 | Club Busperson* | $ 13.23 | $ 26.46 | 32.5 | $ 13,759.20 | $ 3,439.80 | $ 17,199.00 |
| Bravo, Victor** | 4/19/2013 | Club Busperson* | $ 13.23 | $ 26.46 | 11 | $ 4,656.96 | $ 1,164.24 | $ 5,821.20 |
| Carrera, Jorge B** | 8/1/2006 | Club Busperson* | $ 13.23 | $ 26.46 | 17.5 | $ 7,408.80 | $ 1,852.20 | $ 9,261.00 |
| Rodriguez, Dauri** | 10/2/2015 | Club Cleaner | #N/A | #N/A | 8.5 | $ | $ | $ |
| Flores Galena, Jose | 10/12/2015 | Club Cook | $ 23.66 | $ 23.66 | 8.5 | $ 6,435.52 | $ 1,608.88 | $ 8,044.40 |
| Cruz, Miguel E | 11/14/2012 | Club Cook | $ 23.66 | $ 23.66 | 11.25 | $ 8,517.60 | $ 2,129.40 | $ 10,647.00 |
| Falconi, Fernando | 9/5/2012 | Club Cook | $ 23.66 | $ 23.66 | 11.5 | $ 8,706.88 | $ 2,176.72 | $ 10,883.60 |
| Morelos, Hilario | 7/21/2008 | Club Cook | $ 23.66 | $ 23.66 | 15.75 | $ 11,924.64 | $ 2,981.16 | $ 14,905.80 |
| Seabourne, Demmar | 8/21/2008 | Club Cook | $ 24.37 | $ 24.37 | 15.5 | $ 12,087.52 | $ 3,021.88 | $ 15,109.40 |
| Gonzalez, Anastacio | 3/1/2008 | Club Cook | $ 30.45 | $ 30.45 | 16 | $ 15,592.60 | $ 3,898.15 | $ 19,490.75 |
| Mendoza, Hector | 1/1/1989 | Club Cook | $ 23.66 | $ 23.66 | 35.25 | $ 26,688.48 | $ 6,672.12 | $ 33,360.60 |
| Ramirez, Rosario de J | 7/13/2017 | Club Dishwasher | $ 22.36 | $ 22.36 | 6.75 | $ 4,829.76 | $ 1,207.44 | $ 6,037.20 |
| Marmol, Leonardo | 9/15/2016 | Club Dishwasher | $ 22.36 | $ 22.36 | 7.5 | $ 5,366.40 | $ 1,341.60 | $ 6,708.00 |
| Aguilar, Cesario | 3/1/1999 | Club Dishwasher | $ 22.36 | $ 22.36 | 25 | $ 17,888.00 | $ 4,472.00 | $ 22,360.00 |
| Chavez, Edwin | 8/1/1993 | Club Dishwasher | $ 23.66 | $ 23.66 | 30.5 | $ 23,092.16 | $ 5,773.04 | $ 28,865.20 |
| Alvarez, Filimon | 7/1/1992 | Club Dishwasher | $ 23.03 | $ 23.03 | 31.75 | $ 23,398.48 | $ 5,849.62 | $ 29,248.10 |
| Nieves, Armando** | 1/1/1989 | Club Dishwasher | $ 23.66 | $ 23.66 | 35.25 | $ 26,688.48 | $ 6,672.12 | $ 33,360.60 |
| Herrera, Jorge** | 10/8/2012 | Club Handyman | #N/A | #N/A | 11.5 | $ | $ | $ |
| Rodriguez, Angel | 1/24/2013 | Club Laundry | $ 25.73 | $ 25.73 | 11 | $ 9,056.96 | $ 2,264.24 | $ 11,321.20 |
| Uzcha, Walter | 8/1/1991 | Club Porter | $ 22.36 | $ 22.36 | 32.5 | $ 23,254.40 | $ 5,813.60 | $ 29,068.00 |
| Lopez, Ricardo** | 11/17/2013 | Club Porter | $ 22.36 | $ 22.36 | 10.25 | $ 7,334.08 | $ 1,833.52 | $ 9,167.60 |
| Contla, Elezar | 7/1/2000 | Club Potwasher | $ 22.15 | $ 22.15 | 23.75 | $ 16,834.00 | $ 4,208.50 | $ 21,042.50 |
| Cobos, Julio | 1/27/2009 | Club Waiter* | $ 13.00 | $ 26.00 | 15 | $ 6,240.00 | $ 1,560.00 | $ 7,800.00 |
| Palacios, Javier | 6/1/2005 | Club Waiter* | $ 18.05 | $ 36.10 | 18.75 | $ 10,830.00 | $ 2,707.50 | $ 13,537.50 |
| Subhanaga, Bhisan | 1/1/1989 | Club Waiter* | $ 13.00 | $ 26.00 | 35.25 | $ 14,664.00 | $ 3,666.00 | $ 18,330.00 |
| Debowski, Iwona | 5/18/2006 | Club Waitress* | $ 18.05 | $ 36.10 | 17.75 | $ 10,252.40 | $ 2,563.10 | $ 12,815.50 |
| Scalzo, Joseph** | | | #N/A | #N/A | 124.25 | | $ | $ |

| | | 4 Day Severance | Funds Contributions | Total |
|---|---|---|---|---|
| | Total | $ 378,826.20 | $ 94,706.55 | $ 473,532.75 |

**Denotes no wage rate listed          *Denote Tipped Classifications @ 2x

Highlighted employees have no wage rate listed nor a comparable wage rate

# EXHIBIT B



# Club Employees Pension Fund
Report on Potential Employer Withdrawal Liability

Friars Club

Based on an Assumed Withdrawal Date During Plan Year Ended December 31, 2020

© 2023 by The Segal Group, Inc.

 Segal

# Table of Contents

1. General – Method of Calculation and Allocation of Withdrawal Liability ................................... 1

2. Actuary's Assumptions and Methods of Withdrawal Liability Valuations ................................. 3

3. The Plan's Unfunded Vested Liabilities ............................................................................. 4

4. Potential Withdrawal Liability for Friars Club ...................................................................... 6

5. Application of De Minimis Rule ........................................................................................ 8

6. Determination of Payment Amount and Length of Payment Period for Friars Club .................. 9

# 1. General – Method of Calculation and Allocation of Withdrawal Liability

This is a general description of complex calculations required by federal law and pursuant to the Plan's rules. In the case of any inconsistency, the law and the Plan rules will govern.

The Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), signed into law on September 26, 1980, requires assessment of withdrawal liability on an employer that withdraws from the Plan. Under the law, an employer has withdrawn completely if it has permanently ceased operations under the Plan or has permanently ceased to have an obligation to contribute to the Fund.

The amount of withdrawal liability is based on the Fund's unfunded vested benefits at the time of withdrawal. For this purpose "vested benefits" are the benefits for which the participants have a non-forfeitable right. The "unfunded vested liability" refers to the value of vested benefits not covered by assets.

The Trustees of the Club Employees Pension Fund adopted the "one-pool" method, as defined in Section 4211(c)(3) of ERISA, for the calculation and allocation of unfunded vested benefit liability for withdrawal purposes.

Under this method, an employer's withdrawal liability is determined by allocating to the employer a prorated share of the unfunded value of the Fund's vested benefits as of the end of the plan year preceding the year of withdrawal. That unfunded value is reduced by the amount of any outstanding withdrawal liability payments that are reasonably expected to be collected.

The proration to the employer is based on the ratio of (a) the contributions for which the employer was obligated for the ten plan years to (b) total employer contributions to the Fund for that same ten-year period. The total amount of employer contributions with respect to an apportionment base period is reduced by any contributions otherwise included in the total that were made by employers that withdrew from the Fund on or before the apportionment base period and were assessed withdrawal liability.

Determination of the value of the liability for vested benefits must be based on a set of actuarial assumptions. The law prescribes that the assumptions and methods used must be reasonable in the aggregate and "offer the actuary's best estimate of anticipated experience under the plan." It also authorizes the Pension Benefit Guaranty Corporation (PBGC) to promulgate assumptions and methods for use by the Plan's actuary. However, the PBGC has not promulgated assumptions.

The total amount of an employer's withdrawal liability is not ordinarily payable in a lump sum. The law fixes annual payment amounts, to be paid in quarterly installments, unless the Fund has fixed some other schedule.

Case 1:23-cv-02960-AS-RFT    Document 133-2    Filed 03/08/24    Page 5 of 12

The annual amount (for complete withdrawal) is fixed by multiplying:

1. the highest rate the employer was obligated to pay during the last 10 plan years in which it participated, by
2. the employer's average contribution base units for the three consecutive plan years (within the 10 preceding withdrawal) in which its contribution base units were highest.

Payments cease when the total liability and interest have been paid (the law imposes a 20-year maximum, except in the case of mass withdrawal). Interest is included at the rate used for funding (7.25% for withdrawals during 2020).

# 2. Actuary's Assumptions and Methods of Withdrawal Liability Valuations

The actuarial assumptions to be used are the valuation assumptions used for plan funding, except for the investment return rate and the administrative expense charge. To the extent the assets, valued at market, cover the vested benefits, benefits are valued at an investment return rate consistent with current annuity rates; the portion of the benefits that is not yet funded is valued on the interest assumptions used for plan funding.

Specifically, the withdrawal liability valuation assumptions and methods are:

| | |
|---|---|
| Investment Return | To the extent the present value of vested benefits is matched by the market value of plan assets on hand: interest assumptions prescribed by the Pension Benefit Guaranty Corporation under 29 C.F.R. Part 4044 which are in effect for the year ended December 31, 2019. |

| Year Ended December 31: | For Select Period | Select Period | Beyond Select Period |
|---|---|---|---|
| 2019 | 2.53% | 25 | 2.53% |

To the extent the vested benefits are not matched by plan assets at market, the interest assumption used for plan funding:

| Year Ended December 31: | Interest Rate |
|---|---|
| 2019 | 7.25% |

The portion of the vested benefits that is matched by assets is determined by comparing the total present value of benefits at PBGC rates with the total market value of assets; each vested benefit is treated as covered by assets to the same extent as all other vested benefits.

| | |
|---|---|
| Administrative Expenses | A separate expense charge only for that portion of the vested benefits that is matched by assets. For that portion, an expense load equal to that prescribed in Appendix C to PBGC Reg. Part 4044 is used. |
| Mortality, Retirement Rates, Percent Married and Benefit Election Assumptions | Same as used for minimum funding purposes as of the valuation date that is the day following the date for determination of unfunded vested liability, as detailed in the Schedule MB of the Form 5500. |
| Assets | Valued at fair market value as reported in the Plan's audited financial statements filed with the IRS. |

# 3. The Plan's Unfunded Vested Liabilities

The calculations were made with respect to the data supplied to us by the Fund Office as to active employees, pensioners, inactive vested employees and financial data prepared by the Fund Auditor. The calculations were completed using the methodology and assumptions described and the plan of benefits in effect as of December 31, 2019.

The present values of vested benefits as of December 31, 2019 is shown below:

|   |   | Assumptions | |
|---|---|---|---|
|   |   | Plan Funding | PBGC Rates |
| 1. | For retired participants and beneficiaries receiving payments | $40,301,223 | $56,274,547 |
| 2. | For other participants | 46,023,434 | 98,955,770 |
| 3. | Expense load | N/A | 1,367,602 |
| 4. | Total present value of vested benefits | $86,324,657 | $156,597,919 |

The following table, Table 1, shows the basis and the figures on which withdrawal liability is determinable.

## Table 1: Unfunded Present Value of Vested Benefits

The calculations include the following participants as of the valuation date:

| | | |
|---|---|---|
| 1. | Active employees who are fully vested | 1,189 |
| 2. | Inactive employees with vested pension rights | 444 |
| 3. | Pensioners and beneficiaries | 1,256 |

The unfunded present value of vested benefits for withdrawal liability purposes as of December 31, 2019 is outlined below:

| | | |
|---|---|---|
| 1. | Present value of vested benefits based on investment return assumption used for funding | $86,324,657 |
| 2. | Present value of vested benefits at PBGC interest rates | 156,597,919 |
| 3. | Assets at market value | 85,679,325 |
| 4. | Ratio funded at PBGC rates (3) ÷ (2) | 0.5471 |
| 5. | Present value of vested benefits for withdrawal liability purposes ((2) x (4)) +(1.00 − (4)) x (1) | 124,773,224 |
| 6. | Allocable unfunded vested liability (5) − (3) | 39,093,899 |

# 4. Potential Withdrawal Liability for Friars Club

Obligated contribution information for this employer was received from the Fund office as follows:

Table 2

| Year Ended December 31, | Obligated Contributions |
|---|---|
| 2010 | $57,189.43 |
| 2011 | 48,364.99 |
| 2012 | 50,340.59 |
| 2013 | 45,975.20 |
| 2014 | 51,808.75 |
| 2015 | 44,806.89 |
| 2016 | 53,616.40 |
| 2017 | 68,279.62 |
| 2018 | 78,831.18 |
| 2019 | 50,127.00 |

Case 1:23-cv-02960-AS-RFT    Document 133-2    Filed 03/08/24    Page 10 of 12

Based on an assumed date of withdrawal in the year ended December 31, 2020, the determination of the net allocable share of unfunded vested benefits for Friars Club is detailed below. **If the employer actually withdraws after December 31, 2020, the net allocable share of unfunded vested benefits must be recalculated and could be significantly different.**

### Table 3

### Employer: Friars Club

### Assumed Date of Withdrawal: Plan year ended December 31, 2020

| | | |
|---|---|---|
| 1. | December 31, 2019 unfunded present value of vested benefits | $39,093,899 |
| 2. | Outstanding withdrawal liability claims as of December 31, 2019 reasonably expected to be collected | 0 |
| 3. | Employer's contributions January 1, 2010 – December 31, 2019 | 549,340 |
| 4. | Total contributions of all employers obligated to contribute January 1, 2010 – December 31, 2019 | 40,804,103 |
| 5. | Allocable share of unfunded vested benefits $[(1) - (2)] \times [(3) \div (4)]$ | 526,316 |
| 6. | De minimis deductible (See Section 5) | 0 |
| 7. | Potential net allocable share of unfunded vested benefits (5) - (6) | $526,316 |

# 5. Application of De Minimis Rule

The amount of liability allocable is reduced by the lesser of:

1. 3/4 of 1% of the Plan's unfunded present value of vested benefits (determined as of the end of the plan year ending before the date of withdrawal) or
2. $50,000

reduced by the amount, if any, by which the unfunded vested benefits allocable to the employer exceeds $100,000.

Since the total allocable share of unfunded vested benefits before reduction is $526,316, the de minimis amount is $0 and the net allocable share of unfunded vested benefits is $526,316.

# 6. Determination of Payment Amount and Length of Payment Period for Friars Club

A withdrawn employer's withdrawal liability assessment is payable in quarterly installments. The quarterly installment is calculated as one-fourth of the product of:
- The average base units in the three consecutive years that produce the highest average within the 10-year period ended before the plan year of withdrawal, and
- The highest contribution rate in the 10-year period ended with the plan year of withdrawal.

The number of quarterly installments is calculated on the basis of the amount of withdrawal liability and interest at the actuarial valuation rate used for funding purposes. Payments are limited to a maximum of 20 years, including contributions owed but not yet paid.

Based on an assumed withdrawal date in the year ended December 31, 2020

| 1. Total payroll for years ended December 31: | | | | |
|---|---|---|---|---|
| | 2010 | $762,525.73 | 2015 | $597,425.20 |
| | 2011 | 644,866.53 | 2016 | 714,885.33 |
| | 2012 | 671,207.87 | 2017 | 910,394.93 |
| | 2013 | 613,002.67 | 2018 | 1,051,082.40 |
| | 2014 | 690,783.33 | 2019 | 668,360.00 |

| | | |
|---|---|---|
| 2. | Highest consecutive three-year average payroll in the last 10 years prior to the year of withdrawal | $892,120.89 |
| 3. | Highest contribution rate in 10 years ending with year of withdrawal | 7.50% |
| 4. | Required annual payment (2) x (3) | $66,909.00 |
| 5. | Potential allocable share of unfunded vested benefits | $526,316 |
| 6. | Plan funding interest assumption | 7.25% |
| 7. | Quarterly payment (4) / 4 | $16,727.25 |
| 8. | Number of full payments | 43 |
| 9. | Final payment | $6,355.64 |

Payment Schedule: $16,727.25 per quarter for 43 quarters plus a final payment of $6,355.64

Note: Total payroll for each year has been determined using contributions reported by the Fund Office and the employer's contribution rates. This was the only information available to us and this approach should be confirmed with Fund Co-Counsel.

This report was completed under the supervision of Joel Leary, ASA, FCA, MAAA, Enrolled Actuary

#9690494v2/00147.001

✡ Segal    9